LESTER TAYLOR ABERNATHY AND NANCY A. ABERNATHY, HIS WIFE V. RALPH SQUIRES REALTY CO., INC.

No. 8119DC365

(Filed 5 January 1982)

**Unfair Competition § 1— unfair trade practices—insufficient evidence**

Plaintiffs' evidence was insufficient to show that defendant real estate broker engaged in unfair and deceptive trade practices in violation of G.S. 75-1.1 in the sale of plaintiffs' house or in the sale of another house to plaintiffs where it tended to show only that (1) defendant altered the contract for sale of plaintiffs' home so that plaintiffs would receive "50% of net proceeds (expenses including closing costs, mortgage payments, grass cutting, general maintenance, etc.) at closing" rather than the original language of "50% of net proceeds," since the alteration did not change the import of the term "net proceeds"; (2) defendant received a commission on the sale of the house to plaintiffs and, without their knowledge, acted for both the buyer and the seller of the house; and (3) defendant's agent responded affirmatively when asked whether all of the conditions for sale of the house to plaintiffs had been met when in fact the seller had failed to perform his contractural obligation to paint a bedroom, to put insulation beneath a floor, and to allow plaintiffs to inspect the roof.

APPEAL by plaintiffs from *Warren, Judge.* Judgment entered 23 October 1980 in District Court, CABARRUS County. Heard in the Court of Appeals 17 November 1981.

Plaintiffs' action against the corporate defendant alleges breach of contract and commission of unfair and deceptive trade practices. After the defendant answered, denying the material allegations of plaintiffs' complaint, the case was tried before a jury.

At the trial, plaintiffs' evidence tended to show that in July 1977, plaintiffs talked to Vivian Hawkins, then a real estate agent of defendant, about selling their home (the Delganey property) and purchasing another home. Plaintiffs entered into a listing agreement and authorized use of the Multiple Listing Service. Thereafter Hawkins found a home (the Rocky River house) which met plaintiffs' needs, and plaintiffs entered into a contract to purchase the house. The purchase contract stipulated, among other things, that the seller would allow plaintiffs to inspect heating, plumbing, and electrical systems, appliances, and the roof, and further stipulated that seller would paint the water-damaged wall in a bedroom and would finish the insulation.

To ensure that plaintiffs would have the money to purchase the Rocky River house, plaintiffs and defendant entered into an agreement by which the defendant agreed to buy the Delganey property if it had not been sold by the closing date for the Rocky River house. Defendant was to pay plaintiffs $13,400.00 in equity and was to assume a mortgage of $9,400.00. In addition, the agreement provided that, upon sale of the Delganey property, defendant was to pay plaintiffs all proceeds in excess of the expenses involved in the sale of the house.

Originally, the closing date for the Rocky River house was set for November 1977, but for mutually beneficial reasons, plaintiffs and seller of the Rocky River house moved the date up to September. As a consequence of this, the seller and plaintiffs, through the defendant, renegotiated the price on the Rocky River house from $51,900.00 to $50,458.00. Plaintiffs reinstated the same provisions concerning the roof inspection, painting and insulation. In addition, plaintiffs and defendant renegotiated their contract for sale of the Delganey property increasing the equity plaintiffs were to receive and allowing for sale prior to the September closing date of the Rocky River house. By this contract, according to plaintiffs, plaintiffs were to receive 50% of the net proceeds after the Delganey property was sold.

After moving into the Rocky River house, plaintiffs discovered that, contrary to their agreement, seller had not put insulation under the floor of the recreation room. Additionally, the roof leaked and had to be repaired. Plaintiff Lester Abernathy testified that Hawkins had assured him prior to closing that all matters concerning the house had been attended to.

In June 1978, the Delganey house was finally sold. The gross profit from that sale, however, was reduced substantially by such maintenance charges as payments for painting and for a new vinyl floor and by such settlement charges as the loan origination fee, loan discount (VA points), title examination and insurance fees, survey fee, and an ERA warranty. The sale showed a net loss of $381.97, and plaintiffs, consequently, received no further proceeds from their contract with defendant.

At the close of their evidence, plaintiffs waived their contract theory and elected to proceed on the theory that defendant, through its agent Hawkins, had employed unfair and deceptive trade practices in failing to disclose the remaining faults in the Rocky River property and in deducting from gross profits on the Delganey property some of the items enumerated above. Defendant then put on evidence tending to show that agent Hawkins had asked plaintiff Lester Abernathy if the Rocky River contract provisions had been taken care of to his satisfaction, and plaintiff indicated they had. Furthermore, contrary to Abernathy's testimony, the contract to sell the Delganey property to defendant specifically stated that "Lester T. Abernathy [was] to be refunded 50% of net proceeds (expenses including closing costs, mortgage payments, grass cutting, general maintenance, etc.) at closing."

At the close of all the evidence, defendant moved for a directed verdict which was allowed. Plaintiffs appeal.

*Grant & Hastings, P.A., by Randell F. Hastings, for plaintiff appellants.*

*Parham, Helms & Kellman, by James H. Morton, for defendant appellee.*

BECTON, Judge.

The sole issue for our determination is whether the trial court erred in allowing defendant's motion for a directed verdict.

Plaintiffs elected to try their case on "unfair or deceptive acts or practices" theories. G.S. 75-1.1. Whether the facts found by the jury regarding defendant's conduct constitute a violation of G.S. 75-1.1 is a question of law for the trial court's determination. *Hardy v. Toler,* 288 N.C. 303, 218 S.E. 2d 342 (1975).

In the instant case the question presented by defendant's motion for a directed verdict was whether the evidence, considered in the light most favorable to the plaintiffs, was sufficient to show that defendant engaged in unfair and deceptive trade practices in its business dealings with the plaintiffs. *See Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). We conclude that the evidence was not sufficient for submission to the jury.

The concept of unfair and deceptive trade practices has been an elusive one in our courts. The statute does not define the terms "unfair" or "deceptive," and case law, until recently, has shed little light on their meanings. References to the same language in the Federal Trade Commission (FTC) Act, 15 U.S.C. § 45(a)(1), have been made. *See Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980); *Hardy v. Toler.* In *Johnson*, the Supreme Court, noting the broad langauge of the FTC Act, stated that "[w]hat is an unfair or deceptive trade practice usually depends upon the facts of each case and the impact the practice has in the marketplace." [Citations omitted.] 300 N.C. at 262-63, 266 S.E. 2d at 621. The Court went on to define an unfair practice as one which "offends established public policy as well as . . . [one which] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." [Citations omitted.] *Id.* at 263, 266 S.E. 2d at 621. A deceptive practice is one which has the "capacity or tendency to deceive;" proof of actual deception is not necessary. *Id.* at 265, 266 S.E. 2d at 622. "In determining whether a representation is deceptive, its effect on the average consumer is considered." *Id.* at 265-66, 266 S.E. 2d at 622.

With these definitions in mind, we have reviewed the evidence in the light most favorable to plaintiffs, and we have paid particular attention to evidence highlighted in plaintiffs' arguments. First, plaintiffs emphasize that, if their evidence were believed, defendant altered the contract in which plaintiffs agreed to sell defendant the Delganey house, so that instead of reading "50% of net proceeds," it read "50% of net proceeds (expenses including closing costs, mortgage payments, grass cutting, general maintenance, etc.) at closing." Assuming that defendant did alter the contractual language by adding the parenthetically noted items, we do not find that the alteration changed the import of the term "net proceeds." Equally important, the expenses incurred in selling the Delganey property were charged equally

against defendant's potential profit and it, therefore, behooved defendant none to incur unnecessary expenses in order to sell the house.

Had the plaintiffs pursued their contract theory, the jury might have been called upon to determine whether the contract was altered and, if so, what the parties intended by the term "net proceeds." Plaintiffs, however, misinterpreting *Marshall v. Miller*, 47 N.C. App. 530, 268 S.E. 2d 97 (1980), *petition for disc. review by plaintiffs denied* 301 N.C. 401, 274 S.E. 2d 226 (1980), *petition by Attorney General for rehearing allowed* 301 N.C. 721, 274 S.E. 2d 229 (1981), *modified and affirmed* 302 N.C. 539, 276 S.E. 2d 397 (1981), waived their right to proceed on this theory and thereby waived this issue. The *Marshall* case held erroneous jury instructions which allowed the jury to assess damages twice for the same default — once on a breach of contract theory and once under G.S. 75-1.1. The prohibition against double recovery should not be read to mean that the two theories of recovery cannot be submitted to the jury for its determination of the basis, if any, of liability.

The second portion of evidence highlighted by plaintiffs was that agent Hawkins received a commission on the sale of the Rocky River house. Plaintiffs contend that, in receiving such commission, Hawkins acted without their knowledge for both the buyer and the seller of the house, thereby violating G.S. 93A-6(a)(4). That is, plaintiffs contend that defendant's interests were adverse to plaintiffs' interest since the higher the sale price on the Rocky River property, the higher defendant's commission would be. This problem, however, exists in many real estate transactions. In the absence of any evidence that defendant knowingly and wilfully negotiated the sale price for the plaintiffs, we can find nothing deceptive or unfair in this practice.

Finally, plaintiffs argue that the evidence showed that defendant, through agent Hawkins, made substantial and wilful misrepresentations concerning the seller's performance of his contractual obligations to paint the bedroom, to insulate the Rocky River house, and to allow plaintiffs to inspect the roof. Plaintiffs' only evidence regarding these "misrepresentations" was that plaintiff Lester Abernathy asked Hawkins, just prior to closing, whether all the terms of the contract had been met. We cannot

find that Hawkins' affirmative response to such a broad question amounted to an intentional misrepresentation. Furthermore, plaintiffs were in as good a position as defendant to determine whether these items had been attended to. Finally, we note that, if the seller of the Rocky River house had failed to perform his contractual obligations, plaintiffs had a cause of action against him for breach of contract.

In summary, we conclude that the acts of defendant about which plaintiffs complained did not rise to the level of unfair and deceptive trade practices and that the trial court properly granted defendant's motion for a directed verdict.

Affirmed.

Judge CLARK and Judge WHICHARD concur.