LOUIS R. WARFIELD AND ELIZABETH G. WARFIELD v. CLIFTON HICKS, IN-
DIVIDUALLY, AND CLIFTON HICKS BUILDERS, INCORPORATED

No. 8710SC970

(Filed 2 August 1988)

1. **Fraud § 12.1— insufficient evidence of intent to deceive**

   Evidence that defendant builder told plaintiffs the use of beetle infested
   decorative beams in a house being constructed for plaintiffs would pose no
   problems other than a little sawdust was insufficient to support a claim for
   fraud since the evidence did not support an inference that defendant intended
   to deceive or mislead plaintiffs.

2. **Unfair Competition § 1— builder's representation not unfair trade practice**

   An alleged representation by defendant builder that the use of beetle in-
   fested decorative beams in a house being constructed for plaintiffs would pose
   no problems other than a little sawdust does not rise to the level of oppres-
   sive, unscrupulous or deceptive conduct which would constitute an unfair or
   deceptive act or practice within the purview of N.C.G.S. § 75-1.1.

3. **Negligence § 2; Vendor and Purchaser § 6.1— negligent construction—issue
   improperly submitted**

   The trial court erred in submitting an issue as to negligent construction of
   a house to the jury where plaintiffs neither alleged nor proved any injury
   other than the injury to the property itself arising from defendant builder's
   alleged failure to adequately perform its contract or to satisfy express and im-
   plied warranties.

4. **Appeal and Error § 62.1— new trial on liability and damages issues**

   A new trial is awarded not only on issues of damages but also on the
   merits of plaintiffs' claims for breach of contract and warranties in the con-

1

struction of a house where the jury at the first trial failed properly to apply the court's instructions with respect to damages; the evidence was insufficient to support submitted issues as to negligence, fraud and unfair trade practices; and the erroneous submission of those issues may have affected the jury's verdict on the breach of contract and warranty issues which were correctly submitted.

**5. Contracts § 29; Sales § 19— house construction—breach of contract and warranty—measure of damages—jury decision**

In an action for breach of contract and breach of warranty in the construction of a house, the jury should have been allowed to determine whether the proper measure of damages was diminished value or cost of repairs based on its finding as to whether a substantial portion of the work would have to be undone.

**6. Contracts § 21.2; Vendor and Purchaser § 6.1— breach of construction contract and warranty—value evidence**

In an action for breach of contract and breach of warranty in the construction of a house, an appraisal of the house in December 1986 should have been excluded where plaintiffs obtained possession of the house in 1983, since values are to be determined as of the date of tender or delivery of possession to the owner.

**7. Appeal and Error § 25— improper cross-assignment of error**

The appellate court was without jurisdiction to determine a cross-assignment of error constituting an attack on a portion of the trial court's judgment since this argument could properly be raised only by notice of cross-appeal.

APPEAL by defendants from *B. Craig Ellis, Judge.* Judgment entered 31 March 1987 in Superior Court, WAKE County. Heard in the Court of Appeals 2 March 1988.

*Barringer, Allen & Pinnix, by William D. Harazin and C. Lynn Calder, for plaintiff-appellees.*

*Kirk, Gay, Kirk, Gwynn & Howell, by Philip G. Kirk and Joseph T. Howell, for defendant-appellants.*

BECTON, Judge.

This action arises from a contract for construction of a custom home. Plaintiffs, Louis R. and Elizabeth G. Warfield, filed suit against Clifton Hicks Builders, Incorporated (CHB) and Clifton Hicks individually, seeking compensatory and punitive damages based on claims of breach of contract, breach of express and implied warranties, misrepresentation, fraud, and negligence. The

Warfields also alleged that certain conduct of defendants constituted unfair and deceptive trade practices or acts within the meaning of N.C. Gen. Stat. Sec. 75-1.1, entitling them to treble damages and attorneys fees. From a judgment awarding plaintiffs $27,200, defendants appeal. We reverse and remand for a new trial.

I

The evidence at trial showed that in January 1983, defendant Hicks, president of CHB, quoted to Mr. and Mrs. Warfield a price of $208,000 for the construction of a house, based on a set of preliminary blueprints, photographs, and a handwritten "spec" sheet provided by the Warfields. On 8 February 1983, the parties executed an Offer to Purchase and Contract which included the lot and construction of the house for $208,000. On 10 February, before the preparation of final plans by an architect was completed, the parties executed a standard form construction contract which included specifications for various materials to be used in construction and which provided that any changes would be accompanied by a change order signed by both parties.

During construction, disputes arose between the builder and the Warfields over numerous aspects of the building. Various changes instigated by either Mr. Hicks or the Warfields were evidenced by change orders which reflected either the increase or reduction in cost to the Warfields resulting from each change. On 8 September 1983, before construction was fully completed, a closing on the house was held at a final price of $214,837.54. At that time, CHB, through Mr. Hicks, executed a one-year express warranty on the construction of the house and an agreement to complete within thirty days a "punchlist" of items requiring completion or repairs.

The Warfields contested some of the change orders at trial, contending that certain items were included in the original plans and should not have been denominated "extras," and that Mr. Warfield felt coerced into signing the orders by financial pressures and fear of delays in construction. They also introduced evidence that some of the punchlist items were never completed and that various other defects or problems discovered during the warranty period were not remedied by the builder, despite his representations that they would be.

One major dispute between the parties concerned the installation of decorative beams in the kitchen and family room. The Warfields presented evidence that Mr. Hicks refused to install "heavy hand-hewn beams" as called for in the original specifications but offered to substitute old beams from a tobacco barn which were available from George Butts in Fuquay-Varina. At Hicks' suggestion, Mr. Warfield viewed the beams and was satisfied with their appearance but was told by Mr. Butts that they were full of worm holes and could not be used for structural purposes, and that there "might be a couple of beetles in the beams." When Mr. Warfield questioned Mr. Hicks about whether the beetles would be a problem, Mr. Hicks responded ". . . these won't be a problem to you. They'll just make some sawdust." With Mr. Warfield's approval, Mr. Hicks personally installed the beams. Thereafter, the Warfields experienced problems with sawdust and a scratching noise, and learned, in the spring of 1984, that the problems were due to an active infestation of the beams by old house bores and powder post beetles. They also learned that the house could not pass a pest inspection and that, as a consequence, it potentially would be difficult for them or future buyers to obtain financing on the house.

Mr. Hicks testified that he told the Warfields early in their negotiations that he could not provide hand-hewn beams, that he was unaware until the spring of 1984 that the old beams used were infested with wood-boring insects, and that at that time he inquired of a college professor what problems might arise from the infestation. Based on what he was told, he informed Mr. Warfield in late spring or early summer that the beetles posed no threat to the house's structural integrity and that the only bother to him would be the possibility of some dust.

Evidence was also offered by the Warfields that an inspection of their home by an expert in July of 1986 revealed numerous items which were incomplete, below normal construction standards, or in violation of the building code. At least one witness testified concerning the costs of remedying the defective conditions, and a December 1986 appraisal showed a $35,000 lessened value of the house due to defects existing at that time.

At the conclusion of the plaintiffs' evidence, the trial court granted defendant Hicks' motion for a directed verdict on all is-

sues except fraud, misrepresentation, and unfair and deceptive trade practices. The court denied motions for directed verdict by the corporation and by the plaintiffs made at the close of the plaintiffs' evidence and renewed at the conclusion of all the evidence.

Sixteen issues were submitted to the jury and were answered as follows:

1) Did the defendant Clifton Hicks Builders, Inc. breach the contract between it and the plaintiffs?

Answer: No

2) In what amount, if any, have the plaintiffs been damaged by the failure of the defendant Clifton Hicks Builders, Inc. to perform fully?

Answer: None

3) Did the defendant Clifton Hicks Builders, Inc. breach the express warranty given to the plaintiffs?

Answer: Yes

4) In what amount, if any, have the plaintiffs been damaged by the breach of the express warranty?

Answer: 2,300

5) Did the defendant Clifton Hicks Builders, Inc. construct the plaintiffs' dwelling in a negligent manner?

Answer: Yes

6) In what amount, if any, have the plaintiffs been damaged by the negligence of the defendant Clifton Hicks Builders, Inc.?

Answer: 0

7) Did the defendant Clifton Hicks Builders, Inc. breach an implied warranty of workmanlike quality to the plaintiffs regarding the new dwelling?

Answer: Yes

8) In what amount, if any, have the plaintiffs been damaged by the breach of an implied warranty of workmanlike quality by the defendant Clifton Hicks Builders, Inc.?

Answer: 0

9) Did the defendants Clifton Hicks and Clifton Hicks Builders, Inc. fraudulently misrepresent that the wood beams installed in the plaintiffs' dwelling would present no problem to the plaintiffs?

Answer: No

10) What amount, if any, have the plaintiffs been damaged by the fraudulent misrepresentation of the defendants Clifton Hicks and Clifton Hicks Builders, Inc.?

Answer: N/A

11) In your discretion, what amount of punitive damages, if any, should be awarded to the plaintiffs?

Answer: N/A

12) Did the defendants Clifton Hicks and Clifton Hicks Builders, Inc. represent to the plaintiffs that the wood beams would present no greater problem than a little sawdust, and the defendants knew or should have known that the beams were infested with beetles and would not pass a pest inspection thus causing great difficulty to the plaintiffs in selling or refinancing the dwelling?

Answer: Yes

13) Was the defendants Clifton Hicks and Clifton Hicks Builders, Inc. conduct in commerce or did it affect commerce?

Answer: Yes

14) Was the defendants Clifton Hicks and Clifton Hicks Builders, Inc. conduct a proximate cause of the plaintiffs' injury?

Answer: Yes

15) By what amount, if any, have the plaintiffs been injured?

Answer: 8,300

16) What is the amount of damages, if any, due to the plaintiffs without being duplicative?

Answer: 6,400

After the jury returned its verdict, the Warfields moved for judgment notwithstanding the verdict or in the alternative for a new trial, on the damages issue, and defendants moved for a judgment notwithstanding the verdict setting aside Issues Nos. 5, 12, and 15. The trial court denied the motions but set aside the jury's answer to Issue No. 16 as inconsistent with the instructions given. The court entered judgment against defendants for $2,300 plus $8,300 pursuant to the jury verdict on Issues Nos. 4, 12, 13, 14, and 15; trebled the $8,300 pursuant to N.C. Gen. Stat. Sec. 75-16; and denied attorneys fees.

The issues on appeal relate to the admission of evidence, the jury instructions on damages, and various aspects of the trial court's rulings on motions by both parties for directed verdict and judgment notwithstanding the verdict.

## II

Defendants' first contention—that the trial court erred by denying their motions for directed verdict and for judgment notwithstanding the verdict with respect to the issue of unfair or deceptive trade practices—presents the question whether the evidence, considered in the light most favorable to the plaintiffs, was sufficient to show that the individual and corporate defendants violated N.C. Gen. Stat. Sec. 75-1.1 in their business dealings with the Warfields. *See Abernathy v. Ralph Squires Realty Co.*, 55 N.C. App. 354, 285 S.E. 2d 325 (1982). The Warfields maintain that Mr. Hicks' representation to them that the beetle infestation of the ceiling beams would pose no problems other than a little sawdust amounts to an unfair and deceptive act because the statement had the capacity or tendency to deceive.

[1] Although the parties have not raised the question, we must first consider whether there was sufficient evidence to submit to the jury the issue of fraudulent misrepresentation, since proof of fraud necessarily constitutes proof of a violation of the statutory

prohibition against unfair and deceptive acts. *See Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 97, 331 S.E. 2d 677, 681 (1985); *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E. 2d 342, 346 (1975). To make out a case of actionable fraud, plaintiffs must show that: (1) Mr. Hicks made a representation relating to some material past or existing fact; (2) the representation was false; (3) Mr. Hicks knew it was false or made it recklessly and as a positive assertion; (4) Mr. Hicks made the representation with the intention that it be acted upon by the Warfields; (5) the Warfields reasonably relied upon the representation and acted upon it; and (6) they suffered injury. *E.g., Johnson v. Phoenix Mutual Life Ins. Co.*, 300 N.C. 247, 253, 266 S.E. 2d 610, 615 (1980). Moreover, the false representation must have been definite and specific. *Rosenthal v. Perkins*, 42 N.C. App. 449, 451, 257 S.E. 2d 63, 65 (1979).

All of the elements of fraud were not present in this case. In our view, the plaintiffs' evidence taken in the most favorable light shows merely that Mr. Hicks made a general unspecific statement of opinion about the potential future consequences of using beetle infested beams and does not support a reasonable inference that he intended to deceive or mislead the Warfields. Accordingly, we conclude the issue of fraud, represented by Issues Nos. 9, 10, and 11, should not have been submitted to the jury.

[2]   We next consider whether, absent fraud, the evidence of Mr. Hicks' statements about the beams is otherwise adequate to support a conclusion that he violated N.C. Gen. Stat. Sec. 75-1.1(a), which declares unlawful "unfair or deceptive acts or practices in or affecting commerce." In *Johnson v. Phoenix Mutual Life Ins. Co.*, our Supreme Court asserted the general principle that "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 263, 266 S.E. 2d at 621. In essence, "[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *Id.* at 264, 266 S.E. 2d at 622. The concept of "unfairness" is broader than and includes the concept of "deception." *Id.* at 263, 266 S.E. 2d at 621. An act or practice is deceptive "if it has the capacity or tendency to deceive." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E. 2d 397, 403 (1981). The facts surrounding the particular transaction and the impact the practice has in the marketplace determine whether a par-

ticular act is unfair or deceptive. *Id.; Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 230, 314 S.E. 2d 582, 584, *disc. rev. denied*, 311 N.C. 751, 321 S.E. 2d 126 (1984). Further, "[i]n determining whether a representation is deceptive, its effect on the average consumer is considered." *Johnson* at 265-66, 266 S.E. 2d at 622.

In the present case, the Warfields presented testimony of Mr. Butts that he had told both defendant Hicks and the Warfields that the beams "had been infested at one time or another" with beetles. Mr. Warfield testified that when he asked Hicks about the matter, Hicks merely responded that he had had an old piece of furniture in his house for years that had dust beetles in it, that they just made a little bit of sawdust, and that the beetles were not a problem. Applying the foregoing criteria to these facts, we find that the alleged representation by Mr. Hicks simply does not rise to the level of oppressive, unscrupulous, or deceptive conduct which would constitute an unfair or deceptive act or practice within the intended purview of N.C. Gen. Stat. Sec. 75-1.1. Nor does our review of the record disclose the existence of any other facts which would establish a violation of the statute. We therefore hold that the submission to the jury of the claim of unfair and deceptive trade practices, represented by Issues Nos. 12, 13, 14, and 15, was error.

Defendants also assign error to the specific wording of Issue No. 12. Having concluded that this issue should not have gone to the jury, we need not address the arguments relating to this assignment of error.

III

[3] Defendants next contend that the trial court erred by denying the corporate defendant's motions for directed verdict and for judgment notwithstanding the verdict on the issue of negligence. We agree that the facts of this case do not support a claim for negligent construction of the house.

In our opinion, our Supreme Court's decision in *North Carolina Ports Authority v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 240 S.E. 2d 345 (1978) controls the resolution of this issue. Setting forth the principle that "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor,"

*id.* at 81, 240 S.E. 2d at 350, the Court held that negligence was not a proper basis of recovery for an alleged failure of the defendant contractor to properly install a roof in accordance with its contract. Although the Court enumerated several categories of exceptions in which a promisor might be held liable in tort for damages proximately caused by a negligent or willful act or omission in the course of performance of his contract, we. conclude that the case at bar falls within none of them. The Warfields have neither alleged nor proven any injury other than the injury to the property itself arising from the contractor's alleged failure to adequately perform its contract or to satisfy express and implied warranties. We are convinced that, under these circumstances, as in *Ports Authority*, the Warfields' allegations of negligence were surplusage, and it thus was error to submit negligence to the jury as an additional basis for relief.

In so concluding, we reject the Warfields' contention that *Oates v. JAG, Inc.*, 314 N.C. 276, 333 S.E. 2d 222 (1985) authorizes a negligence claim by any purchaser of a dwelling house against the builder for economic loss arising from faulty construction. In *Oates*, the Court did recognize, without discussing *Ports Authority*, that such a cause of action exists in favor of an owner who is *not the original purchaser.* However, nothing in that decision suggests an intent to overrule the Court's earlier holding in *Ports Authority* with respect to claims by the initial purchaser. We therefore presume that the Court intended to leave that holding intact, and to merely recognize a means of redress for those purchasers who suffer economic loss or damage from improper construction but who, because not in privity with the builder, have no basis for recovery in contract or warranty.

IV

[4] By another assignment of error, defendants challenge the damage award, contending the trial court erred by refusing to set aside the jury's answer to Issue No. 15. Both parties agree that the jury failed to understand or properly apply the judge's instructions with respect to damages, but disagree regarding the import of the jury's decisions on Issues Nos. 15 and 16, since No. 16 was intended by the trial judge to elicit a total figure for all claims, without duplication of damages. We conclude that a new trial is necessary to resolve the confusion.

Further, we have already determined that the evidence in this case was inadequate to support claims of negligence, fraud, or unfair and deceptive trade practices. In light of the complexity of the case and the overlapping nature of many of the Warfields' claims for relief, we cannot say that the erroneous submission of nine superfluous issues to the jury did not affect the verdict on the other liability issues which were correctly submitted. For this reason, we order the jury verdict and resulting judgment set aside in their entireties and the case remanded for retrial, not merely on the damages question but also on the merits of the Warfields' claims of breach of contract and of express and implied warranties.

V

Having ordered a new trial, we briefly address a remaining issue concerning damages which may arise upon retrial. Defendants assign error to the trial court's admission in evidence of an appraisal report concerning the value of the Warfields' home as of December 1986, which was offered by the Warfields as evidence of the diminished value of the house resulting from the defendants' alleged breach of the implied warranty of workmanlike construction. By cross-assignment of error, the Warfields argue that the trial court erred by failing to instruct the jury on "diminished value" as an alternative measure of damages.

[5]   There are two methods of measuring damages for defects or omissions in construction which constitute either a breach of warranty or breach of contract: (1) the difference between the value of the building as warranted or contracted for and its value as actually built, and (2) the cost of repairs required to bring the property into compliance with the warranty or contract. *E.g., Gaito v. Auman,* 313 N.C. 243, 327 S.E. 2d 870 (1985); *Hartley v. Ballou,* 286 N.C. 51, 209 S.E. 2d 776 (1974); *Robbins v. C. W. Myers Trading Post, Inc.,* 251 N.C. 663, 111 S.E. 2d 884 (1960). The first method is used when a substantial part of the work must be redone in order to comply with the contract or warranty, resulting in economic waste, while the second method is generally applied when the defects can be corrected without substantial destruction of any part of the house. *E.g., Gaito; Robbins; Stiles v. Charles M. Morgan Co.,* 64 N.C. App. 328, 307 S.E. 2d 409 (1983). Ordinarily, the trier of fact must determine which measure of damages is ap-

plicable based on its finding as to whether a substantial portion of the work would have to be undone. *See Stiles* at 331, 307 S.E. 2d at 412; *LaGasse v. Gardner*, 60 N.C. App. 165, 169-70, 298 S.E. 2d 393, 396 (1982). Consequently, upon retrial, the jury should be allowed to determine the proper measure of damages.

[6] With regard to defendant's argument that the appraisal evidence was inadmissible, we conclude that, because the evidence only concerned the diminished value of the house in December 1986, it should have been excluded. As the Supreme Court said in *Robbins*, and reiterated in *Gaito*, when a diminished value measure of damages is applied, "the values [are] to be determined as of the date of tender or delivery of possession to the owner." *Robbins* at 666, 111 S.E. 2d at 887; *Gaito* at 253, 327 S.E. 2d at 878.

## VI

[7] Finally, we summarily dismiss the Warfields' contention, made by way of cross-assignment of error, that the trial court erred by granting defendant Hicks' motion for directed verdict on the issues of breach of contract, breach of express and implied warranties, and negligence. This argument constitutes an attack on a portion of the trial court's judgment and could properly be raised only by notice of cross-appeal. Consequently, this Court is without jurisdiction to address the question sought to be presented. *See Stevenson v. N.C. Dept. of Insurance*, 45 N.C. App. 53, 262 S.E. 2d 378 (1980).

## VII

In conclusion, we set aside the jury's verdict in its entirety, reverse the judgment of the trial court entered thereon, and remand this matter to the trial court for a trial *de novo* in accordance with this opinion.

Reversed and remanded.

Judges ARNOLD and PARKER concur.