PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

BIANCA ELLIS, individually and on
behalf of all others similarly
situated; MARK SROKA, individually
and on behalf of all others
similarly situated; JAQUELINE
SROKA, individually and on behalf
of all others similarly situated,

      *Plaintiffs-Appellants,*

v.

LOUISIANA-PACIFIC CORPORATION,

      *Defendant-Appellee.*

No. 11-2319

---

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Senior District Judge.
(3:11-cv-00191-GCM)

Argued: September 19, 2012

Decided: November 2, 2012

Before WILKINSON and THACKER, Circuit Judges, and
Michael F. URBANSKI, United States District Judge for
the Western District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Thacker wrote the
opinion, in which Judge Wilkinson and Judge Urbanski
joined.

## COUNSEL

**ARGUED:** Gary Edward Mason, WHITFIELD BRYSON & MASON LLP, Washington, D.C., for Appellants. Richard Thell Boyette, CRANFILL, SUMNER & HARTZOG, LLP, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Daniel K. Bryson, Scott C. Harris, WHITFIELD BRYSON & MASON LLP, Raleigh, North Carolina; Nicholas A. Migliaccio, WHITFIELD BRYSON & MASON LLP, Washington, D.C.; Joel R. Rhine, RHINE LAW FIRM, PC, Wilmington, North Carolina; Auley M. Crouch, III, Christopher K. Behm, BLOCK CROUCH KEETER BEHM & SAYED, LLP, Wilmington, North Carolina; Charles A. Schneider, Martha B. Schneider, SCHNEIDER & SCHNEIDER, Washington, D.C., for Appellants. John Parker Sweeney, WOMBLE CARLYLE SANDRIDGE & RICE LLP, Baltimore, Maryland; James E. Weatherholtz, WOMBLE CARLYLE SANDRIDGE & RICE LLP, Charleston, South Carolina; Meghan N. Knight, CRANFILL, SUMNER & HARTZOG, LLP, Raleigh, North Carolina; Scott Burnett Smith, J. Thomas Richie, BRADLEY ARANT BOULT CUMMINGS LLP, Huntsville, Alabama, for Appellee.

## OPINION

THACKER, Circuit Judge:

Bianca Ellis, Mark Sroka, and Jaqueline Sroka (collectively, the "Appellants") appeal the district court's order dismissing their putative class action complaint. They claim that Louisiana-Pacific Corp. ("LP" or the "Appellee") negligently designed and manufactured Trimboard, a composite building product designed and marketed for use as exterior trim around windows and doors, and violated the provisions of the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"). Appellants also asked the district court for a

declaratory judgment that Trimboard is defective, prematurely deteriorates, and that its warranty is unconscionable. The district court dismissed the negligence and UDTPA claims pursuant to North Carolina's economic loss rule, and it dismissed the declaratory judgment claim because Appellants are pursuing a breach of warranty claim in a separate class action suit. For the reasons that follow, we affirm.

I.

A.

On April 18, 2011, Appellants filed this putative class action lawsuit in the Western District of North Carolina based on alleged latent and patent defects in Trimboard. Appellants never directly purchased Trimboard themselves but, rather, bought homes in which Trimboard had already been installed. Ellis's house was completed in 2005, and the Srokas' house was completed in 2006. Ellis discovered problems with Trimboard on her house in 2010, and the Srokas discovered problems in 2009. They allege that the Trimboard on their houses is either "failing" or "defective but has not yet manifested signs of failure." Compl. ¶ 25.[1]

The complaint contains three counts: (1) a claim for negligent design and manufacture (the "negligence claim"); (2) an unfair or deceptive trade practices claim under N.C. Gen. Stat. § 75-1.1, *et seq.* (the "UDTPA claim"); and (3) a declaratory relief claim concerning Trimboard's alleged latent defects and its warranty (the "declaratory judgment claim"). Specifically, the complaint states as follows:

- LP "failed to provide adequate instructions for the installation of the Trimboard for exterior use . . . [including] fail[ing] to provide adequate

---

[1]The complaint is found at J.A. 142-60. Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

instructions as to the need to seal and to prime the site-cut ends of Trimboard";

- LP's "installation instructions are misleading and in some cases contrary to advisable construction practices, specifically as they relate to flashing and caulking";

- Class members' builders and subcontractors "utilized and followed the installation instructions provided by [LP] for the installation of Trimboard" or, in the alternative, "LP wrongly assumed that typical construction site workers would read, understand, and implement the complex instructions supplied";

- LP's Trimboard is "inherently defective for exterior use and fails to perform as intended because it prematurely deteriorates, rots, swells, buckles, delaminates, absorbs water, warps, and/or bulges under normal conditions and natural, outdoor exposure; causes consequential water and structural damages; and promotes growth of mold, mildew, fungi, and insect infestation in the structures in which it is installed"; and

- LP "engaged in unfair or deceptive acts or practices in violation of [the UDTPA] when, in selling and advertising the Trimboard for exterior use, LP failed to give Plaintiffs and members of the Classes adequate warnings and notices regarding the defect in the Trimboard when used in exterior applications despite the fact that LP knew or should have known of this defect[.]"

Compl. ¶¶ 21-24, 62.

Per the complaint, LP provided an express warranty to "the owners of the residences on which Trimboard was installed and/or applied," Compl. ¶ 15, which stated the following:

> [LP] warrants to the original purchaser *and to any subsequent owner* of a structure on which its LP [ ] Trimboard (the Product) is installed that the Product substrate will not delaminate, check, split, crack, or chip for a period of ten years from the date of installation under normal conditions of use and exposure, provided the trim is properly stored, installed, maintained, and protected as specified in the . . . Trimboard application instructions.

J.A. 161 (emphasis added). However, the complaint alleges that "the consumer, in most cases, would not have been aware of the warranty because it was only included in bundles of Trimboard sent to the wholesaler or distributor and was most likely not passed on through the contractor to the consumer." Compl. ¶ 15. Ellis was able to obtain a copy of the warranty and filed a warranty claim,[2] but the Srokas did not, although they do not dispute that they are covered by it.

The district court granted LP's Rule 12(b)(6) motion to dismiss as to all three counts in the complaint on November 8, 2011. In its order, the court held, first, that the negligence claim was barred by North Carolina's economic loss rule (the "ELR"); second, that the UDTPA claim was also barred by the ELR; and third, that the declaratory judgment claim should have been raised in a similar class action suit in the Eastern District of North Carolina, explained directly below. *See Ellis v. Louisiana-Pacific Corp.*, No. 3:11-cv-191, 2011 WL 5402878 (W.D.N.C. Nov. 8, 2011). Appellants timely noted this appeal.

---

[2]LP denied Ellis's warranty claim. LP stated, "Based upon the information received, we do not find a warrantable issue with your trim. However, it may be time for routine homeowner maintenance." Compl. ¶ 28.

B.

Prior to the filing of the complaint that is subject of this appeal, in 2008, another group of plaintiffs filed a class action suit against LP, which was removed to the Eastern District of North Carolina. *See Hart v. Louisiana-Pacific Corp.*, No. 2:08-cv-47-BO (E.D.N.C. Nov. 21, 2008). The *Hart* class action was ongoing at the time Appellants chose to file the instant case in the Western District of North Carolina.[3] The *Hart* complaint alleges that the Trimboard deteriorated or failed too early, causing property damage and destruction in their homes. It also alleges that LP "held itself out as knowledgeable in the design and manufacture of exterior building products and represented that Trimboard was a high quality product that was superior to wood for use as exterior trim [but] that Trimboard is actually defective in design and manufacture[.]" J.A. 188. Finally, the *Hart* complaint alleges that the warranty is void as unconscionable for many reasons, including that "installation instructions were defective so that the installers would necessarily have to deviate from [them], thereby voiding the warranty." *Id.* at 189. The *Hart* complaint asserts *only* a breach of express warranty claim because North Carolina's statute of repose barred any tort claims that the class plaintiffs could have asserted. Appellants concede that they are also members of the *Hart* class and "acknowledge that they have no express warranty claim in the present lawsuit because they are putative class members [in *Hart*]." *Id.* at 135.

II.

This court reviews the dismissal of a complaint de novo. *See Flood v. New Hanover Cnty.*, 125 F.3d 249, 251 (4th Cir. 1997). Because this case is in federal court based on diversity jurisdiction, the law of the forum state — in this case, North

---

[3]The *Hart* case remains ongoing.

Carolina — applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). We should determine

> how the Supreme Court of [North] Carolina would rule. If th[at] [court] has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue. In making that prediction, we may consider lower court opinions in [North] Carolina, the teachings of treatises, and the practices in other states.

*Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 369 (4th Cir. 2005) (internal quotation marks and citations omitted).[4]

## III.

### A.

Appellants first challenge the district court's decision to dismiss their negligence claim as barred by North Carolina's ELR. We hold that this claim is barred by the ELR, and thus affirm.

### 1.

The ELR provides, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 240 S.E.2d 345, 350 (N.C. 1978). Thus, the rule "prohibits the purchaser of a defective product from bringing a negligence action against the manufacturer or seller of that product to

---

[4]We acknowledge that, unfortunately, the North Carolina Supreme Court has no mechanism for receiving certified questions. *See SunTrust Bank, N.A. v. Macky*, 669 F.3d 177, 182 n.* (4th Cir. 2012); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 284 (4th Cir. 2008).

recover purely economic losses sustained as a result of that product's failure to perform as expected." *Wilson v. Dryvit Sys., Inc.*, 206 F. Supp. 2d 749, 753 (E.D.N.C. 2002). Conversely, "where a defective product causes damage to property other than the product itself, losses attributable to the defective product are recoverable in tort rather than contract." *Ford v. All-Dry of the Carolinas, Inc.*, No. COA10-931, 2011 WL 1483726 at *3 (N.C. Ct. App. 2011) (internal quotation marks and alteration omitted).

The North Carolina Court of Appeals has explained the logic behind the ELR:

> The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective. To give a party a remedy in tort, where the defect in the product damages the actual product, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract.

*Moore v. Coachmen Indus., Inc.*, 499 S.E.2d 772, 780 (N.C. Ct. App. 1998).

The rule is not without its exceptions, however. *Ports Authority* provides four: tort actions are viable if the injury proximately caused by the promisor's negligence

> (1) was an injury to the person or property of someone other than the promisee[;]

> (2) was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee[;]

> (3) was loss of or damage to the promisee's property, which was the subject of the contract, the prom-

isor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, innkeeper or other bailee[; or]

(4) was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor.

240 S.E.2d at 350-51 (internal citations omitted). The North Carolina Supreme Court noted that the list "is not all inclusive," but continued, "our research has brought to our attention no case in which this Court has held a tort action lies against a promisor for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill." *Id.* at 351.

Two North Carolina cases carved out other exceptions to the ELR. The first, *Oates v. JAG, Inc.*, involved a plaintiff who was not the original purchaser of his home but rather bought a home built by the defendant. *See* 333 S.E.2d 222, 225-26 (N.C. 1985). After moving into the house, the plaintiff discovered many defects, which led to expensive repairs and renovations. He sued the defendant for negligent construction, but the trial court granted the defendant's motion to dismiss because no contractual relationship existed between the parties. *See id.* at 224. The North Carolina Supreme Court reversed, holding that "an owner of a dwelling house who is not the original purchaser has a cause of action against the builder and general contractor for negligence in the construction of the house, when such negligence results in economic loss or damage to the owner." *Id.* at 223-24. In so doing, the Supreme Court "disagree[d] with the Court of Appeals' reasoning in support of its decision that plaintiffs should be denied relief solely because plaintiffs were subsequent purchasers and lacked contractual privity with defendant-builder." *Id.* at 225.

The second, *Lord v. Customized Consulting Specialty, Inc.*, involved homeowners who sued Customized Consulting, the construction company that facilitated the construction of their home, and 84 Lumber, who provided allegedly defective trusses that were used in building the house. *See* 643 S.E.2d 28, 29 (N.C. Ct. App. 2007). Although the Lords had a contract with the construction company, they did not have a contract with 84 Lumber, but by the time of trial, only a negligence claim survived against that defendant. *Id.* at 30. 84 Lumber moved for a directed verdict, arguing that the ELR barred recovery in negligence against them. The trial court denied the motion, and the jury returned a verdict against 84 Lumber, which appealed. *See id.*

In affirming, the North Carolina Court of Appeals explained that the trial court was "merely recogniz[ing] a means of redress for those purchasers who suffer economic loss or damage from improper construction but who have *no basis for recovery in contract*." *Lord*, 643 S.E.2d at 32 (emphasis added) (internal quotation marks and alterations omitted). It concluded, "[b]ecause there was no contract between the Lords and the 84 Lumber Defendants, we further find that the economic loss rule does not apply and therefore does not operate to bar the Lords' negligence claims." *Id.* at 33.

However, *Ports Authority*, *Oates*, and *Lord* do not squarely address whether an *explicit* contract is required to invoke the ELR, or whether a contractual remedy, such as by warranty, will suffice. The Court of Appeals had an opportunity to address this issue in *Moore*. *See* 499 S.E.2d at 772-80. There, the plaintiffs sued the manufacturer of their RV and the supplier of a defective part that caused a fire and destroyed the vehicle. The plaintiffs suffered only economic losses and did not have a contract with the RV manufacturer or component manufacturer, but the vehicle was covered by a warranty. The plaintiffs sued in negligence, breach of express warranty, and breach of implied warranty. *See id.* at 774. The court affirmed

a grant of summary judgment in favor of the manufacturer and component manufacturer based on the ELR, explaining that "[t]o give a party a remedy in tort, where the defect in the product damages the actual product, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract." *Id.* at 780; *see also Hospira, Inc. v. AlphaGary Corp.*, 671 S.E.2d 7, 14 (N.C. Ct. App. 2009) (recognizing that *Moore* held "that owners of a recreational vehicle were barred from recovering for pure economic loss . . . under the economic loss rule . . . where . . . the remote supplier was covered under the subsidiary manufacturer's limited warranty"); *Warfield v. Hicks*, 370 S.E.2d 689, 694 (N.C. Ct. App. 1988) (applying ELR to bar original homeowners from recovering from contractor in negligence when contractor used beetle-infested beams in the construction of their home, and distinguishing *Oates* by stating that, in that case, "the Court intended . . . to merely recognize a means of redress for those purchasers who suffer economic loss or damage from improper construction but who, because not in privity with the builder, *have no basis for recovery in contract or warranty*" (emphasis added)).

A North Carolina federal court has recently addressed the issue with which we are presented. In *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785 (E.D.N.C. 2009), Kelly sued GP, designers and manufactures of PrimeTrim, a product similar to Trimboard. PrimeTrim was used in the construction of the plaintiff's home and allegedly failed to work as promised. Kelly brought an express warranty claim, along with negligence, UDTPA, and Magnuson-Moss Act claims against GP. *See id.* at 787. He made no claims for damages other than damage to his home. GP filed a partial motion to dismiss, arguing, *inter alia*, that the ELR barred the negligence claim. The district court granted the motion, explaining that the ELR "focus[es] on the availability of a contractual remedy, including a remedy for breach of warranty," rather than whether there is an explicit contract. *Id.* at 794. The court continued, "North Carolina courts have strived to keep tort and contract

law (including law related to warranties) within their separate spheres." *Id.* at 791 (citations omitted).

In contrast to the case at hand, however, Kelly was the original owner of the home. The district court found this fact persuasive, explaining,

> Although GP and Kelly did not enter a contract, the warranty allocates risk between Kelly and GP, lowers the price of the PrimeTrim, and thereby lowers the price of the home that Kelly built using the PrimeTrim. . . . *As the original owner*, Kelly had the opportunity to participate in such risk allocation with an awareness of how such risk allocation impacts the ultimate price of his home.

*Kelly*, 671 F. Supp. 2d at 795 (emphasis added). Nonetheless, the court explained, "GP's sale of a product with a limited warranty that covers the down-the-stream owner of the product . . . does not open GP to a negligence claim for purely economic loss under North Carolina law once the product is sold to a third party, incorporated into the new home, and allegedly injures itself." *Id.* at 795-96.

2.

The complaint in this case claims only economic loss stemming from the allegedly defective Trimboard. However, Appellants argue that because they never saw the express warranty for Trimboard, they should be viewed in a different light than other plaintiffs, who were original purchasers able to read the warranty or contract and bargain for its terms before buying a product or home. After parsing the cases mentioned above, however, we believe the relevant inquiry under North Carolina case law is whether the plaintiff "ha[s] [a] basis for recovery in contract or warranty." *Warfield*, 370 S.E.2d at 694. Clearly, here, Appellants do have a contractual basis for recovery in warranty, which they are, in fact,

actively pursuing in the *Hart* action. Moreover, the North Carolina Supreme Court has held that contractual privity is not required for a plaintiff to recover for breach of express warranty; therefore, whether the plaintiff had an explicit contract does not affect his ability to recover for his losses under a contractual theory. *See Alberti v. Manufactured Homes, Inc.*, 407 S.E.2d 819, 825 (N.C. 1991) ("[A] direct contractual relationship in the sale of the product itself is not a prerequisite to recovery for breach of express warranty against the manufacturer.").

We also do not believe that the fact that Appellants are downstream purchasers makes a difference in the analysis. In *Moore*, for example, the plaintiffs may have been the original purchaser of the RV, but they had no occasion to bargain or consider the terms of the defective component that caused the RV to catch on fire; yet, the North Carolina Court of Appeals held the ELR nonetheless barred the plaintiffs' negligence claim for loss of the RV. *See* 499 S.E.2d at 780.

Policy declarations from the United States Supreme Court and this court have demonstrated the need for some degree of protection of the manufacturer of an allegedly defective good or component part. This court has observed,

> If intangible economic loss were actionable under a tort theory, the U.C.C. provisions permitting assignment of risk by means of warranties and disclaimers would be rendered meaningless. It would be virtually impossible for a seller to sell a product "as is" because if the product did not meet the economic expectations of the buyer, the buyer would have an action under tort law. The U.C.C. represents a comprehensive statutory scheme which satisfies the needs of the world of commerce, and courts have been reluctant to extend judicial doctrines that might dislocate the legislative structure.

*2000 Watermark Assoc., Inc. v. Celotex Corp.*, 784 F.2d 1183, 1186 (4th Cir. 1986). The Supreme Court has similarly observed, "[p]ermitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 874 (1986).

For these reasons, the district court did not err in deciding that Appellants' negligence claims are barred by the ELR.

B.

Appellants also argue that their claims brought pursuant to the North Carolina UDTPA were improperly dismissed. The district court held that the ELR barred these claims as well. Without reaching that issue, we affirm on the separate ground that the complaint fails to state a UDTPA claim. This court is "entitled to affirm the court's judgment on alternate grounds, if such grounds are apparent from the record." *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002).[5]

The UDTPA is meant to prevent "unfair or deceptive acts or practices in or affecting commerce." *Becker v. Graber Builders, Inc.*, 561 S.E.2d 905, 910 (N.C. Ct. App. 2002) (internal quotation marks omitted). In order to state a claim under the UDTPA, a plaintiff must show "(1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proxi-

---

[5]Furthermore, the North Carolina courts have never addressed whether UDTPA claims are subject to the ELR, and in the absence of such direction, we are well-advised to rely on other grounds. *See Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.*, 506 F.3d 304, 315 (4th Cir. 2007) ("[A]s a court sitting in diversity, we should not create or extend the North Carolina common law[.]").

mately caused injury to the plaintiff." *Id.* Whether conduct is "unfair" or "deceptive" is a legal issue for the court to decide. *Gilbane Bldg. Co. v. FRB*, 80 F.3d 895, 902 (4th Cir. 1996) (applying North Carolina law).

We are mindful that a mere breach of contract claim "is not unfair or deceptive, . . . absent substantial aggravating circumstances." *Gilbane*, 80 F.3d at 903 (internal quotation marks omitted). The North Carolina Court of Appeals has further explained,

> Egregious or aggravating circumstances must be alleged before the provisions of the [UDTPA] may take effect. Aggravating circumstances include conduct of the breaching party that is deceptive. Finally, in determining whether a particular act or practice is deceptive, its effect on the average consumer is considered.

*Becker*, 561 S.E.2d at 910-11 (internal citations omitted). Indeed, "it is unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." *Eastover Ridge L.L.C. v. Metric Constructors, Inc.*, 533 S.E.2d 827, 833 (N.C. Ct. App. 2000) (internal quotation marks omitted).

We have reviewed the complaint and find no allegations of substantial aggravating circumstances sufficient to state a UDTPA claim. Appellants alleged two unfair or deceptive acts on the part of LP: (1) failing to give adequate warnings and notices about the allegedly defective quality of Trimboard, and (2) failing to insure that they were provided with an express warranty.

The first allegation simply re-couches Appellants' breach of warranty claim. But North Carolina has held that a "breach

of contract, even if intentional, is not sufficiently unfair or deceptive to sustain" a UDTPA claim. *Wachovia Bank & Trust Co. v. Carrington Dev. Assocs.*, 459 S.E.2d 17, 21 (N.C. Ct. App. 1995) (internal quotation marks omitted). In short, Appellants allege that LP knew that Trimboard would not live up to the terms of the warranty and should have disclosed this fact to consumers, but this is simply another way of claiming that LP breached its express warranty to consumers — the claim Appellants are pursuing in the *Hart* action.[6] *Cf. Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535-36 (4th Cir. 1989) (applying North Carolina law) (finding that substantial aggravating circumstances did not exist where plaintiff's employer allegedly breached an oral agreement by "deceiv-[ing]" him about the status of his distributorship, as that claim was "at most, [a] simple breach[ ] of contract").

The second allegation also fails. Failing to insure that all consumers who would eventually own a structure containing Trimboard received a copy of the warranty is neither unfair nor deceptive. In fact, North Carolina courts have concluded, "failure to perform an administrative act" is not a substantial aggravating circumstance under the UDTPA. *Ford*, 2011 WL 1483726 at *5. Beyond that, Appellants allege no common law or statutory requirement that LP must insure that their warranties are provided to each and every downstream consumer. That type of requirement would not only be illogical, it would be nearly impossible.

We therefore affirm the district court's dismissal of the UDTPA claim.

---

[6]To the extent Appellants argue that their claim is actually a misrepresentation claim, this also falls flat because the complaint fails to allege actual reliance, one of the elements of such a claim. *See Sunset Beach Dev. LLC v. AMEC, Inc.*, 675 S.E.2d 46, 53 (N.C. Ct. App. 2009).

## C.

Finally, Appellants challenge the district court's dismissal of their declaratory judgment claim, which alleges that Trimboard is defective, prematurely deteriorates, and that the warranty is unconscionable. The court held, "[a]ny challenge to the enforceability of the warranty or the operation of the warranty program are issues which either are or could have been raised in the pending breach of warranty lawsuit in [*Hart*]." *Ellis*, 2011 WL 5402878 at *2.

"[A] district court's decision to entertain a claim for declaratory relief is discretionary and, as such, reviewed for abuse of discretion." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998). The district court did not abuse its discretion in refusing to entertain this claim.

This court has held that the Declaratory Judgment Act "does not impose a mandatory obligation upon the federal courts to . . . entertain a claim for declaratory relief." *Aetna*, 139 F.3d at 421. Over the years, this court has enumerated several factors that the district court should consider in deciding whether to dismiss a declaratory judgment action. Pertinent to this appeal, a declaratory judgment action should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Id.* at 422 (internal quotation marks omitted). We have also emphasized the need to promote "federalism, efficiency, [and] comity." *Id.* at 423.

The district court aptly explained that the *Hart* action is the proper place to raise issues with respect to the warranty and LP's alleged violation of it. To consider those claims in a venue separate from the Eastern District of North Carolina, where *Hart* is pending, and in which Appellants are also parties, would be to disregard the concerns set forth in *Aetna*.

Therefore, we affirm the district court's decision relative to the declaratory judgment claim.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.