[No. 44150.    En Banc.    October 14, 1976.]

STEPHEN J. KLOS, ET AL, *Respondents*, v. HILDA R. GOCKEL, *Appellant.*

*John P. Sullivan* and *M. Bayard Crutcher* (of *Bogle & Gates*), for appellant.

*Richard L. Prout* and *Hageman, Prout, Kirkland & Coughlin*, for respondents.

WRIGHT, J.—This appeal arises from an action by home buyers against the builder-vendor. The patio area and backyard were damaged from a mud slide and the settling of fill. The issue herein is the extent of the rights and obligations arising from the implied warranty of habitability or fitness. The case of *House v. Thornton*, 76 Wn.2d 428, 457 P.2d 199 (1969) contains the basic statement of the law on that species of warranty, it being stated at page 436 that

> when a vendor-builder sells a new house to its first intended occupant, he impliedly warrants that the foundations supporting it are firm and secure and that the house is structurally safe for the buyer's intended purpose of living in it.

This case requires that the above warranty be clarified as to the liability of an occasional builder of houses who constructs houses primarily for personal occupancy, but also with the idea that eventually the house might be sold.

The facts are as follows. Appellant's husband was a self-employed house builder in the Seattle area from 1947 until his death in 1969. The appellant was active in the family business as bookkeeper, planner, and interior decorator. It was the practice of appellant's family to buy several lots in close proximity to each other, build on one lot, occupy the first house when finished, and remain long enough to complete houses on the remaining lots, and ultimately sell all of the houses.

When appellant's husband died, appellant expressed an intention to retire from the building business. However, appellant has continued on a restricted scale. She built three houses on Mercer Island, two of which were sold, and appellant was residing in the third house at the time of trial. Appellant's past building experience is relevant to the

issue of whether appellant can be deemed a professional builder.

The first of the three houses constructed, which appellant lived in from August 1971 to July 1972, was purchased by the respondents in February 1973. Appellant acted as her own general contractor and subcontracted out the foundation, plumbing, and electrical work. The house itself was small and built primarily to suit appellant's personal needs and tastes, as opposed to one built for speculation.[1] Appellant did not originally contemplate selling the house. She occupied the house for a full year. During that time she suffered injuries on two occasions by falling on the stairs, and decided to sell that house and build a house on one level.

In January 1974, a portion of the slope below the rear wall of the house slid. The ground beneath the front patio settled causing cracks and an upending of the patio slabs. The house itself suffered extremely minimal damage. The lot had been excavated to accommodate the dwelling, and precautions were taken in laying the foundation by placing it on top of pilings. Only the excavated portion down the slope from the rear wall of the foundation slid.

After the slide, respondents requested appellant to restore the property to the condition at the time of sale claiming that under *House v. Thornton, supra,* any injuries to a new house were recoverable against the seller-builder thereof. Appellant denied any liability. Respondents went to trial and secured a $5,070 judgment against appellant, the trial judge finding, in part, that (a) appellant was an owner-developer-contractor of the house; (b) the slide, while not injuring the foundation itself, rendered the residence unfit for occupancy, if not in terms of actual danger, then at least in terms of threatening one's peace of mind; and (c) that respondents were the first purchasers-occupants of that dwelling.

---

[1] The other two houses were of that same category. After selling the first house, appellant built a second house for personal use, sold it, moved to Arizona for a time, returned and built a third house.

Appellant appealed, assigning as error the findings that appellant was a commercial builder; that the house had been rendered uninhabitable; and that respondents were purchasers of a new home. Appeal was transferred to this court from the Court of Appeals.

■ The essence of the implied warranty of suitability or habitability requires that the vendor-builder be a person regularly engaged in building, so that the sale is commercial rather than casual or personal in nature. *Bolkum v. Staab*, 133 Vt. 467, 346 A.2d 210 (1975); *Lyon v. Ward*, 28 N.C. App. 446, 221 S.E.2d 727 (1976); *Hartley v. Ballou*, 286 N.C. 51, 209 S.E.2d 776 (1974). The *Hartley* case contains a somewhat more detailed statement of the requirements for such warranty than that which is contained in *House v. Thornton, supra* at 436. The court stated in *Hartley* at page 62:

> [W]e hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, *if he be in the business of building such dwellings*, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee.

(Italics ours.)

In the instant case, appellant testified that she intended at the time she purchased the view lot to build a small home thereon for her personal occupancy. Her conduct, however, is somewhat ambivalent because the basement was designed so that a fairly simple conversion could be made from storage space to living quarters, which conversion, if made, might render the house more salable. It is not enough however that appellant contemplated an eventual sale of the house, for as stated in *House v. Thornton, supra*,

*Padula v. J. J. Deb-Cin Homes, Inc.*, 111 R.I. 29, 298 A.2d 529 (1973), and *Centrella v. Holland Constr. Corp.*, 82 Misc. 2d 537, 370 N.Y.S.2d 832 (1975), the sale must be fairly contemporaneous with completion and not interrupted by an intervening tenancy unless the builder-vendor created such an intervening tenancy for the primary purpose of promoting the sale of the property. *Casavant v. Campopiano*, 114 R.I. 24, 327 A.2d 831 (1974).

We have examined the facts and conclude that there was nothing in appellant's conduct that should have created any sort of belief by respondents that this was a commercial sale. The fact that appellant acted as her own general contractor is not controlling for such is often the case.

It is true that for purposes of warranty liability, the house purchased must be a "new house", but this is a question of fact. The passage of time can always operate to cancel liability, but just how much time need pass varies with each case. The trial court made no findings regarding this particular aspect of the warranty. Since appellant's other assignments of error are meritorious, we find it unnecessary to decide if respondents were purchasers of a "new house".

As a final matter, we note that the house was habitable at all times. The gist of the implied warranty is that the resulting building will be fit for its intended use, *i.e.*, habitation. *Kubby v. Crescent Steel*, 105 Ariz. 459, 466 P.2d 753 (1970); *Gilley v. Farmer*, 207 Kan. 536, 485 P.2d 1284 (1971); *Tavares v. Horstman*, 542 P.2d 1275 (Wyo. 1975); *Yepsen v. Burgess*, 269 Ore. 635, 525 P.2d 1019 (1974).

In the instant case, the only damage to the structure was the slight separation of the aluminum door frame from the wall of the house. Neither this nor the buckling and sinking of the front yard patio slabs affect the habitability of the house, and are not structural defects affecting habitability. The foundation remained stable. The respondents never moved out of the house and were still occupying it at the time of trial. The law of implied warranty is not broad enough to make the builder-vendor of a house absolutely

liable for all mishaps occurring within the boundaries of the improved real property. There is no liability under the rule of *House v. Thornton*, 76 Wn.2d 428, 457 P.2d 199 (1969).

Accordingly, we reverse the trial court with direction to enter judgment for the appellant consistent with this opinion.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.