SAM GAITO AND WIFE, ELEANOR H. GAITO v. HOWARD FRANK AUMAN, JR. v. ALVIN LeGRAND, INDIVIDUALLY AND D/B/A ALVIN LeGRAND PLUMBING AND HEATING

No. 529A84

(Filed 2 April 1985)

1. **Sales § 6.4; Vendor and Purchaser § 6.1— implied warranty of habitability— latent defects**

    An implied warranty of habitability of a recently completed dwelling is limited to latent defects—those not visible or apparent to a reasonable person upon inspection of a dwelling.

2. **Sales § 6.4; Vendor and Purchaser § 6.1— implied warranty of habitability— recently completed dwelling—standard of reasonableness**

    The standard of reasonableness is the appropriate standard for determining whether a dwelling has been recently completed for purposes of the implied warranty of habitability. Among the factors which may be considered in determining this question are the age of the building, the use to which it has been put, its maintenance, the nature of the defects and the expectations of the parties.

3. **Sales § 6.4; Vendor and Purchaser § 6.1— implied warranty of habitability— whether dwelling recently completed—jury question**

    Whether a dwelling completed four and one-half years before plaintiffs received a deed or took possession was "recently completed" for purposes of the implied warranty of habitability was a question of fact for the jury.

4. **Sales § 6.4; Vendor and Purchaser § 6.1— implied warranty of habitability— effect of prior occupation by tenants**

    The effect of occupation by tenants prior to the passage of the deed to the initial vendee is but one of the factors which a factfinder should consider in

determining whether defendant is liable for breach of an implied warranty of habitability.

5. **Sales § 6.4; Vendor and Purchaser § 6.1— implied warranty of habitability — fixtures — test of breach**

The test of a breach of an implied warranty of habitability is not whether a fixture is an "absolute essential utility to a dwelling house" but is whether there is a failure to meet the prevailing standard of workmanlike quality. Under the facts of this case, a jury could properly find that a defective air conditioning system in a recently completed dwelling was a major structural defect as between an initial vendee and a builder-vendor so as to constitute a breach of the implied warranty of habitability.

6. **Sales § 6.4; Vendor and Purchaser § 6.1— breach of implied warranty of habitability — measure of damages**

The measure of damages for breach of the implied warranty of habitability because of a defective air conditioning unit was the cost of replacing the unit where the evidence showed that the defect could be remedied without destroying a substantial part of the dwelling.

Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL from a decision of the Court of Appeals, 70 N.C. App. 21, 318 S.E. 2d 555 (1984), affirming the judgment of *Burris, J.,* at the 1 November 1982 Civil Session of District Court, MOORE County.

Plaintiffs Sam and Eleanor Gaito brought this action against defendant Howard Frank Auman, Jr. on 19 May 1981, alleging in their complaint that in April 1978 they purchased a home from Auman, its builder, and moved into the home in June 1978. The Gaitos alleged that the purchase price of the home included central air conditioning, but that the air conditioning system in the house never worked properly despite repeated efforts to correct the cooling problems. The plaintiffs alleged that they were damaged in the amount of $3,500 as a result of a breach of warranty on the part of the defendant Auman.

In his answer and amended answer defendant Auman denied liability under a theory of implied warranty of habitability of a recently completed dwelling on grounds that the house was not new at the time plaintiffs purchased it and on grounds that plaintiffs were aware that the house was not new. Defendant Auman also filed a third party complaint against Alvin LeGrand, who Auman alleged supplied and installed the air conditioner in the home. On 30 April 1982 defendant filed a motion for summary judgment which the trial court denied.

The evidence at trial tended to show that the house in dispute was completed by defendant in November 1973 as a speculation house. Defendant was in the business of building houses. The house sat vacant one and one-half years before defendant Auman contracted to sell it to a man named Lee Cole. Although no deed was passed conveying title to him, Cole lived in the house for two months. While living there, Cole bulldozed the area around the house to make a pasture for horses. Cole left the house after he became unable to make a payment and forfeited his down payment.

The house was next rented to a realtor, Jack Vernon, for a period of six months. In 1976 Raymond and Catherine Ashley rented and lived in the house for fifteen months. During the time the Ashleys lived in the house, the air conditioning system did not cool the house properly. During three weeks of 95 degree weather, the Ashleys were unable to get the temperature of the house below 85 degrees. The Ashleys contacted defendant Auman about the problem and defendant LeGrand went to the house to attempt repairs. LeGrand replaced compressors and Freon and did electrical work. Another air conditioning repairman, Metrah Spencer, subsequently replaced the compressor, opened up and rearranged the duct work. He did not change the capacity of the air conditioning unit.

In early 1978 defendant Auman listed the house for sale with a local real estate company, and Thomas Caulk, one of the firm's realtors, showed the house to the Gaitos. Caulk told the Gaitos that the house was four years old and that it had been occupied for two short periods of time. The Gaitos decided to purchase the house and had Caulk inspect it before the closing. The closing on the house was in April 1978 and plaintiffs moved in in June. Plaintiffs first turned on the air conditioning at the end of June 1978 when the temperature outside was in the eighties. Although plaintiffs let the system run two days and nights, the system created only a ten degree difference between outside and inside temperatures. The Gaitos contacted Auman several times during the summer of 1978 and had repairs done. The repairs included the installation of power vents, an exhaust fan, and insulation for the duct work, the changing of filters, and the addition of Freon. The ducting system was reworked, and the compressor was replaced two times. In 1979 the Gaitos converted their garage into an

apartment. They had duct work added and attached the apart-ment to the air conditioning system for the house.

Rod Tripp, who was qualified as an expert in the field of heating and air conditioning, testified for the plaintiffs that in 1973 the accepted standard in the air conditioning industry for the differential between outside and inside temperatures was 20 degrees when the outside temperature was 95 degrees. In 1978 the accepted differential was 15 degrees. Tripp stated that in his opinion a four ton air conditioning system rather than the three and one-half ton system originally installed was the proper size for the Gaitos' house. Tripp testified that the cost of installing a four ton system in a house in 1980 would have been approximate-ly $3,655. At the time of trial the cost would have been $3,955.

At the close of the evidence, Judge Burris granted defendant Alvin LeGrand's motion to dismiss the case against him based on the statute of limitations. Defendant Auman's attorney made a motion to dismiss the case on grounds that the implied warranty of habitability theory was inapplicable. The trial court denied his motion and allowed the jury to deliberate on the question of defendant's liability.

The jury returned with a verdict in favor of the plaintiffs in the amount of $3,655. Defendant appealed to the Court of Ap-peals, which affirmed the trial court. Judge Hedrick dissented.

*Pollock, Fullenwider, Cunningham & Patterson, P.A., by Bruce T. Cunningham, Jr., for plaintiff appellees.*

*Brown, Holshouser, Pate and Burke, by G. Les Burke, for de-fendant appellant.*

BRANCH, Chief Justice.

The question posed by this appeal is whether the Court of Appeals erred in affirming the judgment in favor of the plaintiffs on a theory of implied warranty of habitability. The majority con-cluded that a residential structure could be considered new for purposes of the implied warranty within the maximum applicable statute of limitations period. We reject this reasoning.

Although the majority opinion did not address the procedural posture of the questions before it, we note that the defendant

builder's claim is that the trial court erred in denying his motions for summary judgment, directed verdict and judgment notwithstanding the verdict. Upon a motion for summary judgment the burden is on the moving party to establish that there is no triable issue of fact and that he is entitled to judgment as a matter of law. *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972). The test is whether the moving party presents materials that would require a directed verdict in his favor if offered at trial. *Coakley v. Ford Motor Co.*, 11 N.C. App. 636, 182 S.E. 2d 260, *cert. denied*, 279 N.C. 393, 183 S.E. 2d 244 (1971).

Where a motion for directed verdict is made at the conclusion of the plaintiff's evidence, the trial court must determine whether the evidence, taken in the light most favorable to the plaintiff, was sufficient to submit the case to the jury. *Kelly v. International Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). Like the motion for directed verdict, the motion for judgment notwithstanding the verdict tests the legal sufficiency of the evidence to take the case to the jury and support the verdict for the plaintiff. *See Snider v. Dickens*, 293 N.C. 356, 237 S.E. 2d 832 (1977).

The essence of defendant's arguments, however, is that plaintiffs' claim was not cognizable under an implied warranty theory because of the age of the house and its occupation by tenants prior to its purchase by the plaintiffs. Although we held in *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 225 S.E. 2d 557 (1976), that the implied warranty of habitability arises by operation of law, we hold that the applicability of the warranty is to be determined on a case by case basis and that under these facts, plaintiffs presented a legally cognizable claim under a theory of implied warranty of habitability.

The trend of recent judicial decisions has been to invoke the doctrine of implied warranty of habitability or fitness in cases involving the sale of a new house by the builder. *See Humber v. Morton*, 426 S.W. 2d 554 (Tex. 1968); *Annot.*, 25 A.L.R. 3d 372 (1969). The rigid common law rule of *caveat emptor* in the sale of recently completed dwellings was relaxed in this state by this Court's opinion in *Hartley v. Ballou*, 286 N.C. 51, 209 S.E. 2d 776 (1974). In *Hartley* the plaintiffs purchased a "recently" constructed house from defendants. Although they inspected the

house prior to moving in, plaintiffs observed nothing amiss. Shortly after moving in the house showed signs of substantial water leakage and insufficient waterproofing in the basement. This Court, in an opinion authored by Chief Justice Bobbitt, concluded that the defendant builder-vendor had an obligation to perform work in a proper, workmanlike and ordinarily skillful manner. Chief Justice Bobbitt then stated the rule as follows:

> [I]n every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee.

*Id.* at 62, 209 S.E. 2d at 783.

[1] The doctrine recited in *Hartley* is known as an implied warranty of habitability and represents a growing trend in the jurisprudence of our states. An implied warranty of habitability is limited to latent defects—those not visible or apparent to a reasonable person upon inspection of a dwelling. *Griffin v. Wheeler-Leonard and Co.*, 290 N.C. 185, 225 S.E. 2d 557 (1976) (defect was poor waterproofing which caused standing water in crawl space).

The relaxing of the rigid rule of *caveat emptor* in *Hartley* is based on a policy which holds builder-vendors accountable beyond the passage of title or the taking of possession by the initial vendee for defects which are not apparent to the purchaser at that time. This policy is justified because the innocent purchaser is often making one of the largest investments of a lifetime from one whose experience and expertise places him in a dominating position in that sale. *See Bethlahmy v. Bechtel*, 91 Idaho 55, 415 P. 2d 698 (1966); 25 A.L.R. at 391.

Defendant appellant argues that the facts of this case are legally insufficient to support a verdict for the plaintiff because the

facts do not fall within the exception to the rule of *caveat emptor* established by *Hartley*. Defendant contends that an implied warranty of habitability is inapplicable because both the pretrial pleadings and evidence at trial show that the house was not "recently completed" or under construction at the time of the passing of the deed; the plaintiff claims and the evidence shows instead that the house was built four and one-half years earlier. Defendant also argues that the previous occupancy by tenants invalidated any implied warranty which may have arisen.

We first consider defendant's argument that he must prevail because the house was built four and one-half years before the plaintiffs received a deed or took possession. Our cases do not address the precise limits of our requirement in *Hartley* that a house be "recently completed." We therefore turn to other jurisdictions for instruction on this question.

A number of courts have established a standard of reasonableness in determining how the age of a house affects the application of the warranty. *See Sims v. Lewis*, 374 So. 2d 298 (Ala. 1979); *Barnes v. Mac Brown and Co.*, 264 Ind. 227, 342 N.E. 2d 619 (1976); *Smith v. Old Warson Development Co.*, 479 S.W. 2d 795 (Mo. 1972); *Padula v. J. J. Deb-Cin Homes, Inc.*, 111 R.I. 29, 298 A. 2d 529 (1973); *Waggoner v. Midwestern Development, Inc.*, 83 S.D. 57, 154 N.W. 2d 803 (1967).

In *Barnes* the plaintiffs in 1971 purchased a home which had been completed in 1967 and had been sold to an intermediate purchaser. After plaintiffs moved in, a large crack appeared in a wall, and the plaintiffs discovered that the basement leaked. In considering the question of the applicability of an implied warranty of habitability, the Indiana Supreme Court applied a reasonableness standard:

> This extension of liability is limited to latent defects not discoverable by a subsequent purchaser's reasonable inspection, manifesting themselves after the purchase. The standard to be applied in determining whether or not there has been a breach of warranty is one of reasonableness in light of the surrounding circumstances. The age of the home, its maintenance, the use to which it has been put are but a few factors entering into this factual determination at trial.

342 N.E. 2d at 621.

In a subsequent case, the Indiana Court of Appeals considered whether the warranty extended to a defective septic tank in which the defect appeared five years after the completion of the dwelling. Relying on *Barnes* and the reasonableness standard, the court stated that where a defective septic tank was involved "we cannot say, as a matter of law, that five years is too long a period of time to extend the implied warranty of fitness." *Wagner Construction Co. v. Noonan*, 403 N.E. 2d 1144 (Ind. App. 1980).

In a case decided by the Washington Supreme Court, *Klos v. Gockel*, 87 Wash. 2d 567, 554 P. 2d 1349 (1976), plaintiffs purchased a home in 1973 which had been completed in July 1972. The builder-vendor had lived in the house approximately one year before plaintiffs purchased it. After plaintiffs moved in, a portion of the slope below the rear wall of the house slid, causing the patio to crack and patio slabs to upend. Although the Court in *Klos* rejected the applicability of the warranty on other grounds, it reasoned that the passage of a year would not necessarily invalidate a warranty of habitability.

> It is true that for purposes of warranty liability, the house purchased must be a "new house," but this is a question of fact. The passage of time can always operate to cancel liability but just how much time need pass varies with each case.

87 Wash. 2d at 571, 554 P. 2d at 1352. *See also Tavares v. Horstman*, 542 P. 2d 1275 (Wyo. 1975) (warranty applied where septic tank failed after five years because "we appreciate that different parts of construction may have different expected life").

[2, 3] We are persuaded that the reasoning of these courts is sound and that the standard of reasonableness is the appropriate standard for determining whether a dwelling has been recently completed. Thus, under the facts of this case, it was a question of fact for the fact finder to determine whether the house was "recently completed." Among some of the factors which may be considered in determining this question are the age of the building, the use to which it has been put, its maintenance, the nature of the defects and the expectations of the parties. This standard allows extension of the warranty to vary in lengths of time, depending on the nature of the defect and whether the warranty should reasonably be expected to apply. *See Sims v. Lewis*, 374 So. 2d 298 (Ala. 1979).

**[4]** Even so, defendant argues that the tenancies which intervened between construction and purchase by plaintiffs rendered the warranty inapplicable. We disagree. We note that the purpose of the warranty is to protect homeowners from defects which can only be within the knowledge of vendors. There are many kinds of major structural defects upon which the presence of tenants can have little or no effect. In other cases intervening tenants may contribute to or directly cause major defects in a dwelling's structure. We hold that the effect of occupation by tenants prior to the passage of the deed to the initial vendee is but one of the factors which a fact finder should consider in determining whether defendant is liable for breach of an implied warranty of habitability. *See Casavant v. Campopiano*, 114 R.I. 24, 327 A. 2d 831 (1974) (warranty affected by tenants only if tenants causally connected with defects).

At this point we note that *Hartley* limits the implied warranty of habitability to *initial vendees* at the time of the taking of possession or the passing of the deed. Here plaintiff was an initial vendee and therefore it is unnecessary for us to discuss the applicability of the implied warranty to subsequent purchasers. For the same reason, we disavow any inferences that may arise from the footnote from the decision of the Court of Appeals relating to this question.

Defendant contends that to extend an implied warranty to this factual situation will be disastrous to home builders who would "for all intents and purposes be prevented from renting homes they were unable to sell" for fear that the builders would be liable for damage to the home caused by the tenants.

However, builders are still accorded substantial protection by the requirement that the defect in a dwelling or its fixtures be latent or not reasonably discoverable at the time of sale or possession. Claimants must also show that structural defects had their origin in the builder-seller and in construction which does not meet the standard of workmanlike quality then prevailing at the time and place of construction. *Hartley*, 286 N.C. 51, 209 S.E. 2d 776. We have also made it clear that the implied warranty falls short of "an absolute guarantee." *Id*. at 61, 209 S.E. 2d at 782. In regard to this argument we wish to make it clear that the test of reasonableness to determine whether a dwelling is "recently com-

Gaito v. Auman

pleted" does not affect the relevant statutes of limitation and repose.

[5] Although defendant did not raise the argument at the Court of Appeals level, he now argues that an implied warranty is inapplicable to an air conditioning unit because it is not "an absolute essential utility to a dwelling house." In *Hartley* we held that the builder of a recently completed dwelling impliedly warrants that "the dwelling, *together with all its fixtures*, is sufficiently free from major structural defects and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction." 286 N.C. at 62, 209 S.E. 2d at 783. (Emphasis added.)

Courts have found a breach of implied warranty for defects arising in many different areas of construction. *See, e.g., Sims v. Lewis,* 347 So. 2d 298 (Ala. 1979) (defective septic tank); *Carpenter v. Donohue,* 154 Colo. 78, 388 P. 2d 399 (1964) (cracks in basement wall); *Weeks v. Slavick Builders, Inc.,* 24 Mich. App. 621, 180 N.W. 2d 503, *affirmed,* 384 Mich. 257, 181 N.W. 2d 271 (1970) (leaky roof); *Schipper v. Levitt & Sons, Inc.,* 44 N.J. 70, 207 A. 2d 314 (1965) (failure to install boiler valve which regulated temperature for water used for domestic purposes); *Waggoner v. Midwestern Development, Inc.,* 83 S.D. 57, 154 N.W. 2d 803 (1967) (water seepage in basement); *Humber v. Morton,* 426 S.W. 2d 554 (Tex. 1968) (fireplace and chimney defective).

The test of a breach of an implied warranty of habitability in North Carolina is not whether a fixture is an "absolute essential utility to a dwelling house." The test is whether there is a failure to meet the prevailing standard of workmanlike quality. *See Griffin v. Wheeler-Leonard & Co.,* 290 N.C. 185, 225 S.E. 2d 557 (1976) (breach of standard of workmanlike quality not "liveability" is test of breach of warranty). We hold that under the facts of this case, a jury may properly find a defective air conditioning system in a "recently completed dwelling" to be a major structural defect as between an initial vendee and a builder-vendor.

After a review of the evidence we hold that under a theory of implied warranty of habitability, the plaintiff raised questions of fact and a legally cognizable cause of action sufficient to survive defendant's motions for summary judgment, directed verdict and judgment notwithstanding the verdict.

[6] Since Judge Hedrick in his dissent took exception to the Court of Appeals majority's affirmance of the trial court on the issue of damages, we consider the relevant rules of damages. The rule as stated in *Hartley* is that a vendee can maintain an action against a builder-vender for damages for the breach of implied warranty of habitability "either (1) for the difference between the reasonable market value of the subject property as impliedly warranted and its reasonable market value in its actual condition, or (2) for the amount required to bring the subject property into compliance with the implied warranty." *Hartley v. Ballou,* 286 N.C. at 63, 209 S.E. 2d at 783. The Court in *Hartley* cited *Robbins v. C. W. Trading Post, Inc.,* 251 N.C. 633, 111 S.E. 2d 884 (1960) in which Justice Moore explained the principles behind the two measures of damages in the context of a breach of a construction contract:

> "The fundamental principle which underlies the decisions regarding the measure of damages for defect or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case. *In a majority of jurisdictions, where the defects are such that they may be remedied without the destruction of any substantial part of the benefit which the owner's property has received by reason of the contractor's work, the equivalent to which the owner is entitled is the cost of making the work conform to the contract.* But where, in order to conform the work to the contract requirements, a substantial part of what has been done must be undone, and the contractor has acted in good faith, or the owner has taken possession, the latter is not permitted to recover the cost of making the change, but may recover the difference in value." 9 Am. Jur., Building and Construction Contracts, sec. 152, p. 89; *Twitty v. McGuire,* 7 N.C. 501, 504. The difference referred to is the difference between the value of the house contracted for and the value of the house built—the values to be determined as of the date of tender or delivery of possession to the owner.

*Id.* at 666, 111 S.E. 2d at 887. (Emphasis added.)

The evidence in this case shows that the defect complained of may be remedied without destroying a substantial part of the dwelling. Since the appellant did not bring forward the trial court's instructions, we must assume they were correctly given. *See Mann v. Virginia Dare Transportation Co.*, 283 N.C. 734, 198 S.E. 2d 558 (1973). It appears that the jury's verdict correctly represented the cost of making the builder-vendor's work conform to the implied warranty of habitability—in this case the cost of replacing the original air conditioner. Since plaintiffs do not contest defendant's assertion that he is entitled to receive the original three and one-half ton unit if a four ton unit is installed, we do not consider defendant's argument in this regard. We therefore do not disturb the jury's award of damages.

For the reasons stated, the decision of the Court of Appeals is affirmed.

Affirmed.

Justice VAUGHN did not participate in the consideration or decision of this case.