[No. 20800-8-II. Division Two. September 4, 1998.]
GARY L. BRICKLER, ET AL., *Respondents*, v. MYERS CONSTRUCTION, INC., *Appellant*.

270

*Thomas F. Miller*, for appellant.

*Charles Wilson*; and *Jon E. Cushman* of *Cushman, Raymond & Middleton, P.S.*, for respondents.

MORGAN, J. — In October 1991, the Bricklers purchased a new home from Myers Construction, Inc. They paid $182,500. Their written agreement with Myers provided in part:

> In the event any party to this Agreement . . . shall institute suit to enforce any rights hereunder, the prevailing party shall be entitled to court costs and reasonable attorney's fee.[1]

During the first year of occupancy, the Bricklers noted surface water in the front yard, as well as construction defects like leaks over the fireplace, cracks over the doors, faulty faucets, and defective light fixtures. The surface water was from the septic system, which Myers ultimately admitted was faulty.

According to the Bricklers, they continued to live in the home because they could not afford to rent a second home. They reduced their use of the septic system by taking showers, doing the laundry, and washing dishes on a three-day rotation. They did not use the front yard, but they nonetheless suffered "from otherwise unexplained bouts of dysentery."[2] They continued to pay $1,500 per month in mortgage payments, taxes and insurance.

---

[1] Clerk's Papers at 477.

[2] Br. of Resp't at 5.

After 26 months, the Bricklers repaired the septic system using $13,187 of their own money. According to them, the repair is only a temporary solution, and the fair market value of the home has been reduced by 10 percent ($18,200).

The Bricklers sued Myers for the cost of repairing the various construction defects, and for breach of the implied warranty of habitability. Myers stipulated that it had breached the warranty, and the matter came on for jury trial.

After the evidence had been presented, the trial court instructed that the jury could award damages for loss of use of property, in addition to the cost of repairs and any diminution in market value. Myers objected by saying, "We would also . . . take exception to Instruction No. 20, the measure of damages in relation to the reasonable value of the loss of use of the property[;] . . . there was no loss of use in the fact that they were not required to ever leave the house and did not in fact leave the house."[3] Myers did not make any other objection to the loss of use instruction.[4]

After deliberating, the jury awarded $900 for miscellaneous construction defects and $53,187 for breach of the implied warranty of habitability.

After trial, the court denied Brickler's motion for attorney fees. It reasoned that "an implied warranty of habitability does not arise out of a purchase and sale agreement for the land itself. It is a creature strictly of the law and does not give rise to a recovery of attorney's fees under the terms of the contract."[5]

Myers appeals, and the Bricklers cross-appeal. Myers claims that the trial court erred by instructing on damages for loss of use. The Bricklers claim that the trial court erred by not allowing them to amend their complaint on

---

[3]Report of Proceedings at 665.

[4]After the jury returned its verdict, Myers made other objections related to loss of use. None of those came in time to aid the trial court, and none are material here.

[5]Report of Proceedings at 867.

the morning of trial, by not instructing on damages for emotional distress, and by not awarding attorney's fees.

I.

In this court, Myers "is not contending that a party is always precluded from having an instruction for 'loss of use' under an implied warranty of habitability."[6] Rather, it argues that the Bricklers are not entitled to an instruction on loss of use under the circumstances presented here because (1) the evidence was insufficient to support such an instruction and (2) "[a]llowing 'Diminished Value' in conjunction with 'Loss of Use' created a windfall for Brickler[s]."[7]

Myers waived both arguments by not making them at the time of trial.[8] Its only timely argument to the trial court was that "there was no loss of use in the fact that they were not required to ever leave the house and did not in fact leave the house."[9] It does not reiterate that argu-

[6]Br. of Appellant at 7.

[7]Reply Br. at 16.

[8]See RAP 2.5(a). Parenthetically, we would reject the first of Myers' two arguments, even if he had presented it to the trial court. The Bricklers presented evidence that they were paying $1,500 per month for their home. Using that fact, a jury could reasonably infer that it would cost at least that much to rent a similar home, for a landlord renting a similar home would have to rent it for an amount that would cover the mortgage, taxes and insurance. The evidence was sufficient to support the instruction.

Likewise, we would reject the second of Myers' two arguments, even if he had presented it to the trial court. Once liability is determined, the object of an action like this is to make the claimant whole. Pugel v. Monheimer, 83 Wn. App. 688, 692, 922 P.2d 1377 (1996), review denied, 131 Wn.2d 1024 (1997) ("court should use a measure of damage that makes the injured party as whole as possible without conferring a windfall"). Viewed in the light most favorable to the Bricklers, the evidence shows that they (a) lost the use of major parts of the home for 26 months; (b) repaired part of the problem, using $13,187 of their own money; and (c) were left, after repairs, with a home that had only 90 percent of its value. They would not be made whole unless they received all three of these damage items, and thus damages for loss of use did not duplicate the other items.

[9]Report of Proceedings at 665.

ment on appeal, presumably because the law does not support it.[10]

## II.

Bricklers claim that the trial court erred by refusing to award them reasonable attorney's fees. As already seen, it provided for fees to any prevailing party "who shall institute suit to enforce any rights hereunder."[11]

The issue is whether the implied warranty of habitability should be deemed an implied-by-law term of a contract for the sale of house, where a contract otherwise exists. The Oregon Supreme Court decided that issue in *Cabal v. Donnelly*.[12] It said:

> This case presents the question whether an action by the purchasers of a new home (plaintiffs) against their builder-vendor (defendant) under the implied warranty that the home was fit for habitation is an action on a contract—thereby entitling the prevailing party to attorney fees under their earnest money agreement—or an action in tort—with no attorney fees awarded.
>
> . . . .
>
> In the present case, the trial court found that the plumbing and bathroom fixtures, equipment and septic system were so defective that they rendered the house uninhabitable. The impact of these defects can be stated in simple terms. The plaintiffs in this case contracted to buy a residence. What they got was something less. We hold that plaintiffs' action for breach of warranty was an action on their contract with defendant. As provided by the contract, therefore, plaintiffs are entitled to reasonable attorney fees.[13]

 Our Supreme Court has agreed to the extent of

---

[10]*See Holmes v. Raffo*, 60 Wn.2d 421, 431, 374 P.2d 536 (1962).

[11]Clerk's Papers at 477.

[12]302 Or. 115, 727 P.2d 111 (1986).

[13]*Cabal*, 302 Or. at 117-22 (footnotes omitted).

saying that a warranty of habitability is an implied-in-law term of a contract for the sale of a home. In *Klos v. Gockel*,[14] the court said:

> [We] hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor [i]f he [or she] be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that . . . the dwelling . . . is constructed in a workmanlike manner . . . ; and that this implied warranty *in the contract of sale* survives the passing of the deed or the taking of possession by the initial vendee.[15]

In *Foisy v. Wyman*,[16] the court said that a lease is a contractual relationship, and "[f]rom that contractual relationship an implied warranty of habitability and fitness for the purposes intended is a just and necessary implication."[17] And in *Atherton Condominium Apartment Owners Association Board v. Blume Development Co.*,[18] the court said that "the implied warranty of habitability should attach because a purchaser . . . 'has a right to expect to receive that for which he has bargained . . . .' "[19]

Division One has also agreed, though in a case not directly on point. In *Miller v. Badgley*,[20] it said "the warranty of merchantability is an implied term of the sales contract."[21] *Miller* is not on point only because it involved the UNIFORM COMMERCIAL CODE's implied warranty of mer-

---

[14]87 Wn.2d 567, 554 P.2d 1349 (1976).

[15]*Klos*, 87 Wn.2d at 570 (quoting *Hartley v. Ballou*, 286 N.C. 51, 62, 209 S.E.2d 776 (1974)) (emphasis added).

[16]83 Wn.2d 22, 515 P.2d 160 (1973).

[17]*Foisy*, 83 Wn.2d at 26 (quoting *Lemle v. Breeden*, 51 Haw. 426, 433, 762 P.2d 470 (1969)).

[18]115 Wn.2d 506, 799 P.2d 250 (1990).

[19]*Atherton*, 115 Wn.2d at 521-22 (quoting *Frickel v. Sunnyside Enters., Inc.*, 106 Wn.2d 714, 719-20, 725 P.2d 422 (1986)).

[20]51 Wn. App. 285, 753 P.2d 530, *review denied*, 111 Wn.2d 1007 (1988).

[21]*Miller*, 51 Wn. App. at 297.

chantability rather than the common law's implied warranty of habitability.

We did not reach a contrary conclusion in *Donovan v. Pruitt*.[22] In saying "that the implied warranty of habitability does not arise out of the written contract evidencing the sale"[23] for purposes of the 6-year statute of limitation, we were parroting the phraseology of the statute of limitations, RCW 4.16.040, and not holding that the implied warranty could not be an implied-in-law, *nonwritten* term of a contract of sale for purposes of reasonable attorney fees. Indeed, we were not called upon to decide, and we did not decide, whether the implied warranty is an implied-in-law term of a contract of sale for purposes of reasonable attorney's fees. Facing that question now, we find the cases discussed above to be binding or persuasive, and we rule that the Bricklers are entitled to the reasonable attorney's fees in both the trial and appellate courts.

We need not address the Bricklers' remaining contentions. They conditionally waived those contentions at oral argument, and the conditions have been fulfilled.

Affirmed, except that the order denying reasonable attorney fees is reversed. On remand, the trial court shall award reasonable attorney fees incurred by the Bricklers in the trial and appellate courts.

SEINFELD and ARMSTRONG, JJ., concur.

Review denied at 137 Wn.2d 1021 (1999).

---

[22]36 Wn. App. 324, 674 P.2d 204 (1983).

[23]*Donovan*, 36 Wn. App. at 325 (emphasis added).