[No. 22720-1-III. Division Three. February 8, 2005.]

JAMES BURBO, *Appellant*, v. HARLEY C. DOUGLASS, INC., *Respondent*.

686

*Michelle Kay Wolkey* (of *Michelle Kay Wolkey, P.S.*), for appellant.

*J. Steve Jolley* (of *Herman Herman & Jolley, P.S.*), for respondent.

¶1 Sweeney, A.C.J. — The court dismissed this suit by an owner-occupier of a new home against his builder-seller on summary judgment. The case raises two essential questions. The first is whether a breach of a builder's implied warranty of habitability requires defects which make the house literally unlivable. We conclude that it does not. The second question is whether the owner here made a sufficient showing that the builder knew of and concealed defects to support his cause of action for fraudulent concealment and violation of the Consumer Protection Act, chapter 19.86 RCW. We find triable issues of fact on this issue. We therefore reverse the summary dismissal of the owner's complaint.

## FACTS

¶2 James Burbo bought a newly constructed home from builder, Harley C. Douglass, Inc., (Douglass) on June 6, 2001. Both Douglass and its construction superintendent, Lyle Brown, visited the building site frequently during construction. Douglass and Mr. Brown also have extensive knowledge and experience of proper construction practices and the Uniform Building Code. The home passed the Spokane County Building Department inspection. The purchase price was $134,000.

¶3 As a condition of closing the sale, Douglass required Mr. Burbo to sign a contractor's limited warranty agreement. Mr. Burbo knew that the limited warranty disclaimed implied warranties.

¶4 In July 2001, Mr. Burbo noticed a crack in the foundation, wide enough to see daylight through. Douglass caulked the surface of the crack above ground level inside and out, but not the middle. In November, cracks appeared in a concrete driveway. Douglass refused to repair these. In December, problems with the roof appeared. Water began leaking into the living room over the fireplace. The water damaged walls, floor, carpet, and personal property. Douglass applied a temporary fix to the roof but assured

Mr. Burbo it was long term. Snow came in through a defective seal around a bathroom skylight. And the front door did not fit.

¶5 Mr. Burbo's engineering experts discovered that the felt underlay required by the building code between the roof and the shingles was either of insufficient weight, improperly applied, or nonexistent. These experts found other building code violations, including a structural column supporting the upper floor that was not seated in its footing. This resulted in major cracks in the garage floor and would inevitably cause cracking upstairs.

¶6 Mr. Burbo complained. Douglass ordered some repairs by outside contractors. These were satisfactory. Other repairs were done by Douglass employees. The quality of these repairs was unacceptable to Mr. Burbo and prompted this suit. The problems with the roof, garage floor, support column, and driveway were not corrected. The replacement front door fit worse than the old one, and the molding around the door and jamb was damaged. Douglass bolted together two beams to support the deck, and one of the beams split.

¶7 Mr. Burbo sued. He alleged breach of the implied warranty of habitability, fraudulent concealment, and violation of the Consumer Protection Act. Douglass moved for summary judgment. It characterized the defects as poor workmanship and the code violations as minor and, therefore, not sufficient to trigger the implied warranty of habitability.

¶8 Lori Rayburn works for the company that repaired Mr. Burbo's water damage. She listed problems with the roof. She described Douglass's repair job as a "short term mask for the real problem" and said all the work had to be redone. Clerk's Paper's (CP) at 157, 154. Construction expert John D. Cuddy testified that the Uniform Building Code standards were the "minimum requirements for habitable construction." CP at 136. And code noncompliance "will, over time, compromise the structural integrity and the long term safety of this home." CP at 137.

¶9 The court summarily dismissed Mr. Burbo's complaint. The court expressed reservations about the disclaimer of the implied warranty of habitability in Douglass's limited warranty agreement, noting that it was neither conspicuous nor negotiated. The court also found disputed facts as to whether Douglass was given sufficient opportunity to repair the defects. Report of Proceedings (RP) at 4. But the court ultimately concluded that the defects were beyond the scope of an implied warranty because the home was not totally unfit for habitation. The court also ruled that the undisputed facts did not establish the required intent element of fraudulent concealment. And the court rejected the Consumer Protection Act claim because there was no showing that the conduct had the capacity to deceive other consumers. It also concluded that the attorney fee clause of the purchase and sale agreement entitled Douglass to fees as the prevailing party.

## DISCUSSION

Scope of the Implied Warranty of Habitability

¶10 Mr. Burbo argues that a builder's implied warranty of habitability provides a remedy when building code violations make a home unfit to live in without substantial repairs. He contends that the first owner/occupier should not have to show that the house is falling down to assert its protection. Douglass responds that it effectively disclaimed any implied warranties by its limited warranty agreement. And in any event, Douglass argues, Mr. Burbo constructively waived the right to any remedy because he refused to allow Douglass to continue to attempt repairs.

¶11 We review a summary judgment de novo. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We review the affidavits, facts, and record on file for any genuine dispute of material fact. *Dep't of Labor & Indus. v. Kaiser Aluminum & Chem. Corp.*, 111 Wn. App. 771, 778, 48 P.3d 324 (2002). We engage in the same inquiry as the trial court. We review questions of law de novo and accept the

facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Williamson, Inc. v. Calibre Homes, Inc.*, 147 Wn.2d 394, 398, 54 P.3d 1186 (2002).

*Motion to Strike*

¶12 As a preliminary matter, Douglass moves in its opening brief to strike "inadmissible" evidence from the record on appeal. But it made no attempt to exclude this evidence in the trial court.

¶13 And we consider the evidence or issues presented to the trial court. RAP 9.12. We will entertain a motion to strike portions of briefs that do not comply with the Rules of Appellate Procedure, but not facts. *Lewis v. City of Mercer Island*, 63 Wn. App. 29, 31-32, 817 P.2d 408 (1991). The trial judge designates in the summary judgment order the documents and evidence he or she considered. Additional evidence that was before the trial court but not designated in the order may be made part of the appellate record by supplemental order of the trial court or by stipulation of counsel. RAP 9.12. But the rules do not accommodate original evidentiary rulings here in the Court of Appeals.

¶14 Douglass is correct that, on a motion for summary judgment, the trial court should consider only evidence that will be admissible at trial. *King County Fire Prot. Dist. No. 16 v. Hous. Auth. of King County*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994). But arguments to exclude evidence must be addressed to the trial court. We review evidentiary matters solely for manifest abuse of discretion. *State v. Bourgeois*, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997). And we presume that the judge knows the law and disregards improper evidence. As a matter of course, we consider only those factual allegations that are supported by the record. *Lewis*, 63 Wn. App. at 32.

¶15 We therefore deny the motion to strike.

*Disclaimer and Waiver*

¶16 Mr. Burbo signed a one-year limited warranty agreement. It included language whereby the seller disclaimed any implied warranties, including habitability.

¶17 The implied warranty of habitability arises by implication from the sale transaction itself. And it is, therefore, independent of the terms of the sales contract. *Stuart v. Coldwell Banker Commercial Group, Inc.*, 109 Wn.2d 406, 417, 745 P.2d 1284 (1987). Disclaimers are not favored in the law. *Olmsted v. Mulder*, 72 Wn. App. 169, 176, 863 P.2d 1355 (1993). A seller's disclaimer of the implied warranty must be (1) conspicuous, (2) known to the buyer, and (3) specifically bargained for. *Id.* at 176-77 (citing *Lyall v. DeYoung*, 42 Wn. App. 252, 257, 711 P.2d 356 (1985)). In an action on the implied warranty, the seller must prove these elements. *Lyall*, 42 Wn. App. at 257.

¶18 The disclaimer language here is not conspicuous. It is in the same small print as the rest of the agreement. And the disclaimer was not negotiated. It was a take-it-or-leave-it "deal breaker." CP at 15. Mr. Burbo said he saw the disclaimer. But it is, at least, debatable on this record whether he understood its implications.

¶19 Douglass also asserts that the buyer waived the implied warranty of habitability by not permitting Douglass to repair the defects. This waiver defense is based on the limited warranty provision that the sole remedy for any defects is repair by the seller. But the implied warranty of habitability does not restrict the buyer's remedy to repairs. An action on an implied warranty of habitability sounds in contract. Therefore, the court may grant the compensatory damages sought by Mr. Burbo in his complaint. *See, e.g., Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 881 P.2d 986 (1994).

¶20 We conclude, then, as a matter of law, that Douglass's attempts to disclaim the implied warranty of habitability were ineffective. And Mr. Burbo did not waive his remedies under the implied warranty of habitability,

even though he eventually refused Douglass's offer of further repairs.

*Implied Warranty*

¶21 The trial court concluded that the implied warranty of habitability did not afford a remedy for the defects here because the premises were not so unsafe that occupancy was impossible. So the question here is whether that is the test.

¶22 An implied warranty of habitability requires (1) a plaintiff who is the first purchaser of (2) a new home from (3) a defendant whose business is building homes, and (4) defects that render the home unfit for its intended purpose. *Frickel v. Sunnyside Enters., Inc.*, 106 Wn.2d 714, 717-20, 725 P.2d 422 (1986). The first three elements and the specifics of the construction defects are not disputed. Only (4), the fitness element, is disputed. The question is whether, accepting Mr. Burbo's description of the defects, they fall within the implied warranty of habitability.

¶23 Whether the implied warranty of habitability accommodates a particular construction defect must be resolved on a case-by-case basis. *Atherton Condo. Apartment-Owners' Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 519, 799 P.2d 250 (1990). That is, we follow the general rule that the applicability of an implied warranty to a particular set of facts is a mixed question of law and fact to be determined by the trier of fact. *See, e.g., Jeffries v. Clark's Rest. Enters., Inc.*, 20 Wn. App. 428, 431, 580 P.2d 1103 (1978) (merchantability); *Kasey v. Suburban Gas Heat of Kennewick, Inc.*, 60 Wn.2d 468, 474-76, 374 P.2d 549 (1962) (fitness of purpose).

¶24 Resolution of the dispositive element in such cases is frequently so highly fact-dependent that it is essentially a question of fact to be determined by the jury with careful instructions by the court. *Baum v. Murray*, 23 Wn.2d 890, 902, 162 P.2d 801 (1945). Here that element is whether the defects entitled Mr. Burbo to compensation under the implied warranty. Sometimes, the undisputed facts—here the defects—may be so egregious as to be decisive as a

matter of law. But usually, reasonable minds could differ as to whether the factual circumstances constitute the condition given in the conclusion. In that case, the decision is one for the jury and summary judgment should be denied. *Id.* That is what we have here. Both Mr. Burbo and Douglass offered expert opinion evidence on the severity of the consequences of the undisputed defects. Mr. Burbo's experts said the defects made the home unfit for its intended purpose. Douglass's experts said the defects were mere blemishes.

¶25 The trial court accepted Douglass's extreme characterization of the degree of severity of defects necessary to violate the implied warranty of habitability. The law is evolving on this point.

¶26 A builder of a new home impliedly warrants that the construction is " 'of proper workmanship and reasonable fitness for its intended use.' " *Hoye v. Century Builders, Inc.*, 52 Wn.2d 830, 833, 329 P.2d 474 (1958) (quoting *Hill v. Polar Pantries*, 219 S.C. 263, 64 S.E.2d 885, 888 (1951)). The purchaser of a new home has a cause of action for breach of the implied warranty of habitability if the builder-vendor "deviates from fundamental aspects of the applicable building code." *Atherton*, 115 Wn.2d at 522 n.10; *Lian v. Stalick*, 106 Wn. App. 811, 817-18, 25 P.3d 467 (2001).

¶27 Douglass relies on a line of cases that articulate a more restrictive definition of habitability. In *House v. Thornton*, for example, the court described the warranty as guaranteeing that the foundations are "firm and secure and that the house is structurally safe for the buyer's intended purpose of living in it." *House v. Thornton*, 76 Wn.2d 428, 436, 457 P.2d 199 (1969). But the Thornton home's foundations were unstable and the house itself unsafe. *Id.* Based on *Thornton*, the court in *Stuart* denied a remedy under the implied warranty, holding that covered defects must be so egregious and fundamental as to "profoundly compromise the essential nature of the subject property as a dwelling." *Stuart*, 109 Wn.2d at 416. In *Stuart*, the dwelling itself was

sound; only exterior decks, balconies, and walkways were so defective as to be unfit for their intended purpose and hazardous. *Id.* at 411-12. In *Klos v. Gockel*, recovery was denied when a mudslide damaged a patio and backyard but caused only minor damage to the house itself. *Klos v. Gockel*, 87 Wn.2d 567, 554 P.2d 1349 (1976).

¶28 Again, the lesson from *Atherton* is that these cases (construction defects) are fact specific. *Atherton*, 115 Wn.2d at 519. And none of these cases addresses the facts here. This house has building code violations. Those violations resulted in defects. The defects let the elements in and show visible, if not dire, foundation and support problems.

¶29 In *Gay v. Cornwall*, a leaky roof requiring extensive repairs violated the implied warranty of habitability. *Gay v. Cornwall*, 6 Wn. App. 595, 596, 494 P.2d 1371 (1972). Leaky roofs and cracked foundations breach the implied warranty if the builder-vendor deviated from "fundamental aspects of the applicable building code." *Atherton*, 115 Wn.2d at 522 n.10. *Atherton* bases its analysis on the "seminal" case of *Carpenter v. Donohoe*, 154 Colo. 78, 388 P.2d 399 (1964). The language adopted is that builder-vendors impliedly warrant that the homes they construct comply with applicable building codes, are built in a "workmanlike" manner, and are suitable for habitation. *Atherton*, 115 Wn.2d at 518 (citing *Carpenter*, 154 Colo. at 83-84).

¶30 The construction in *Atherton* failed to meet the building code's one-hour fire resistance standard. *Atherton*, 115 Wn.2d at 512. But the court emphasized that an imminently dangerous condition is not an essential element. *Id.* at 519. And the court rejected the "egregious" language of earlier cases:

> In a vacuum, a strongly worded phrase like "egregious defects" could easily be construed as unnecessarily constrictive. However, as is frequently the case in appellate interpretation, applying earlier formulas in a new factual context creates new shading, new shadows. We conclude that the facts of this case clearly demonstrate the wisdom of applying the implied warranty of habitability to these circumstances.

*Id.* at 520. Mere defects in workmanship are, of course, not included. But building code violations that are not merely trivial or aesthetic concerns may well be. *Id.* at 522. We have rejected the notion (from *Klos*, 87 Wn.2d at 571) that a homeowner must have moved out of the house in order to prevail on an implied warranty of habitability. *Lian*, 106 Wn. App. at 816.

¶31 Here, the building code violations were not so serious as to force the occupants to evacuate. But neither were they trivial or aesthetic. The rain and snow came in. The foundation was cracked. And the support for the bedrooms was not connected to its base. A jury could find that the fitness of the home was impaired and the implied warranty was breached.

¶32 The implied warranty of habitability may well be the buyer's sole protection from latent construction defects. Also, as between builder and buyer, only the builder is in a position to avoid construction defects. Finally, the buyer has the right to receive what he or she bargained for—a home fit to live in. *Atherton*, 115 Wn.2d at 521-22.

¶33 We reverse the trial court's dismissal of Mr. Burbo's claim for breach of the implied warranty of habitability.

FRAUDULENT CONCEALMENT

¶34 Mr. Burbo's alternative theory of recovery is fraudulent concealment. The measure of damages is the difference between the actual value of the property and what the property would have been worth without the misrepresentation. *Obde v. Schlemeyer*, 56 Wn.2d 449, 455, 353 P.2d 672 (1960).

¶35 A seller must disclose a defect of which he has knowledge that is dangerous to the property, health or life of the purchaser, is unknown to the purchaser, and could not be discovered by a careful, reasonable inspection. *Id.* at 452-53. The defect must also materially impair the resale value. *Mitchell v. Straith*, 40 Wn. App. 405, 410, 698 P.2d 609 (1985); *Luxon v. Caviezel*, 42 Wn. App. 261, 264-65,

710 P.2d 809 (1985). Mr. Burbo contends that he at least established genuine issues of material fact on these elements.

¶36 First, he contends, he showed that Douglass had direct knowledge that the quality of the construction was substandard because Mr. Douglass and Mr. Brown visited the site frequently and controlled the quality of the work. Mr. Burbo contends the evidence that shoddy work was Douglass's standard practice was also sufficient to support a reasonable inference of knowledge. Douglass responds that Mr. Burbo could only speculate that Douglass knew about the defects. And, again, the defects were not substantial and did not endanger property, health, or life. And a professional inspection would have disclosed them prior to the sale. Douglass also responds that the value of the home was not substantially affected; it went up.

¶37 At trial, Mr. Burbo must show that Douglass had actual, subjective knowledge of the defects. *Thornton*, 76 Wn.2d at 433. Proof that Douglass "knew or should have known" is not enough. *Atherton*, 115 Wn.2d at 532-33. But actual knowledge can be proved by circumstantial evidence. *Nauroth v. Spokane County*, 121 Wn. App. 389, 393, 88 P.3d 996 (2004). Actual knowledge of a defect does not necessarily mean actual knowledge that injury will result. *See, e.g., Howland v. Grout*, 123 Wn. App. 6, 11, 94 P.3d 332 (2004) (Department of Labor and Industries private action exception).

¶38 Douglass argues that Mr. Burbo's answers to unambiguous deposition questions rule out any factual dispute. And Mr. Burbo cannot create a factual issue with affidavits that only contradict his deposition. *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 782 P.2d 1107 (1989). *Marshall*, relied on by Douglass, is distinguishable. The plaintiff in *Marshall* testified in deposition that he learned of his cause of action on a certain date. But when faced with a statute of limitations defense, he contradicted that statement in a later affidavit in which he changed the date. *Id.* at 185.

¶39 Unlike *Marshall*, Mr. Burbo's deposition testimony does not negate objectively verifiable facts. At their depositions, Mr. Burbo and his domestic partner simply were unable to come up with direct evidence to support their subjective belief that Douglass must have known the quality of construction at the point of sale. Mr. Burbo produced evidence, in the form of his own affidavits as well as declarations by Harley Douglass himself and his superintendent, Lyle Brown, that they closely supervised and controlled the construction. Mr. Burbo also produced the declaration by another Douglass homeowner, Brian Grytdal, that he and other buyers of Douglass properties had defective roofs that Douglass had been unwilling to repair.

¶40 The evidence also established that Mr. Douglass had been in construction since the age of six and had extensive knowledge and experience. He was familiar with the building code. He visited the Burbo home site extensively and "was constantly observing and inspecting the progress of construction." CP at 32. He said he saw no construction defects and no code violations before the sale. He acknowledged that a few "minor code violations" do exist. CP at 33. He conceded the roof was not built to code and that the front door was warped. CP at 35, 45.

¶41 A fact finder could infer that Douglass knew the homes he was selling were not built to code.

CONSUMER PROTECTION ACT

¶42 Violation of the Consumer Protection Act requires a showing of: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce, (3) public interest impact, (4) injury to the plaintiff's business or property, and (5) causation. RCW 19.86.020; *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

¶43 Mr. Burbo contends Douglass violated the Consumer Protection Act by offering a property with known defects to

the public and also by misrepresenting the quality of the purported repairs.

¶44 What constitutes an unfair and deceptive act or practice is a question for the fact finder. *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 921, 32 P.3d 250 (2001). Again, summary judgment should be granted only if no reasonable person could infer the essential elements of the claim based on the undisputed facts. The disputed elements here are deceptive practices and potential public impact. The analysis of these two factors is inherently circular.

¶45 To establish an unfair or deceptive practice does not require proof of intent to deceive. *Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 759, 649 P.2d 828 (1982). The question is whether " 'the action has the capacity to deceive a substantial portion of the purchasing public.' " *Luxon*, 42 Wn. App. at 268 (quoting *Haner*, 97 Wn.2d at 759).

¶46 Factors to be considered in assessing potential public impact are whether the facts suggest a pattern of conduct, the potential for repetition, and the likelihood that others will be affected. *Hangman Ridge*, 105 Wn.2d at 790. Where a private contract is involved, the public interest is impacted if the defendant advertised to the general public and if the parties occupied unequal bargaining positions. *Id.* at 790-91. In an implied warranty violation case, listing a property with known defects in a multiple listing service is a Consumer Protection Act violation. *Luxon*, 42 Wn. App. at 268.

¶47 As with the fraudulent concealment claim, a Consumer Protection Act claim depends on whether Mr. Burbo can persuade a trier of fact that Douglass sold him a house with prior knowledge of concealed defects. By doing so, Mr. Burbo establishes his prima facie Consumer Protection Act case because it is undisputed that Douglass advertised to the general public and listed the property with a multiple listing service. If he did so with knowledge of the defect, then both disputed elements of deceptive practice and

public impact are satisfied. Coming from the other end of the analysis, if a jury accepts Mr. Burbo's practice and pattern of conduct argument, it could both infer knowledge and find the necessary public impact.

 ¶48 Mr. Burbo also claimed unfairness and deception in the way Douglass responded to his complaints—for example, by replacing part of the roof with cheap, short-lived materials and claiming the repair would last 50 years. But this is strictly a matter between these parties and could not affect the general public. Mere failure to repair warranty items to the buyer's satisfaction or breach of a private contract does not establish a Consumer Protection Act violation. *Pilch v. Hendrix*, 22 Wn. App. 531, 591 P.2d 824 (1979).

¶49 Whether Douglass had actual knowledge is a disputed material fact that precludes summary judgment on the Consumer Protection Act claim.

ATTORNEY FEES

 ¶50 Both parties request fees pursuant to RAP 18.1(b). Attorney fees are awarded only pursuant to contract, statute, or a recognized ground of equity. *Wilkerson v. United Inv., Inc.*, 62 Wn. App. 712, 716, 815 P.2d 293 (1991).

*Implied Warranty*

¶51 By statute, attorney fees are awarded to the prevailing party in an action on a contract that specifically provides for attorney fees and costs incurred to enforce its provisions. RCW 4.84.330.

 ¶52 The warranty of habitability exists independently of any express terms of the contract for sale. It arises by implication from the sale transaction itself. *Stuart v. Coldwell Banker Commercial Group, Inc.*, 109 Wn.2d 406, 417, 745 P.2d 1284 (1987); *House v. Thornton*, 76 Wn.2d 428, 436, 457 P.2d 199 (1969). But the implied warranty of habitability is an implied-in-law term of the contract for sale for the purposes of attorney fees. *Brickler v. Myers Constr., Inc.*, 92 Wn. App. 269, 275, 966 P.2d 335 (1998).

¶53 Here, the purchase and sale agreement provides for attorney fees to the prevailing party in any dispute arising from the sale, including an implied warranty claim.

*Fraudulent Concealment*

¶54 Fraudulent concealment sounds in tort, not contract. Therefore, the prevailing party would not be entitled to attorney fees. *Norris v. Church & Co.*, 115 Wn. App. 511, 517, 63 P.3d 153 (2002).

*Consumer Protection Act*

¶55 The Consumer Protection Act provides for fees to the prevailing party. RCW 19.86.090.

CONCLUSION

¶56 In sum we conclude that disputed issues of fact remain, precluding summary judgment on all claims. And we accordingly reverse.

KURTZ and BROWN, JJ., concur.

Reconsideration denied March 18, 2005.

Review denied at 155 Wn.2d 1026 (2005).